1

2

3

4                              UNITED STATES DISTRICT COURT

5                            NORTHERN DISTRICT OF CALIFORNIA

6

7    JOAN GURASICH,                              Case No.  14-cv-02911-DMR

              Plaintiff,                         **ORDER GRANTING IN PART AND
8                                                DENYING IN PART DEFENDANTS'
                                                 MOTION FOR SUMMARY
9         v.                                     JUDGMENT; GRANTING IN PART
                                                 AND DENYING IN PART PLAINTIFF'S
10   IBM RETIREMENT PLAN, et al.,                MOTION FOR SUMMARY JUDGMENT**

              Defendants.                        Re: Dkt. Nos. 35, 42
11

12          This is a dispute about entitlement to pension benefits pursuant to the Employee

13   Retirement Income Security Act of 1974 ("ERISA").  Plaintiff Joan Gurasich brings this action

14   against Defendant IBM Retirement Plan ("IBM Plan"), as well as Defendant International

15   Business Machines Corporation ("IBM") as the Plan Administrator.  The parties filed cross-

16   motions for summary judgment and partial summary judgment.  Defs.' MSJ, Docket No. 35; Pl.'s

17   MSJ, Docket No. 42.  Having considered the parties' submissions and oral argument, and for the

18   reasons stated below, Defendants' motion is **granted in part and denied in part**, and Plaintiff's

19   motion is **granted in part and denied in part.**

20                                   I.      FACTS

21          The facts set forth below are undisputed unless otherwise stated.  Plaintiff is a former IBM

22   employee.  The parties dispute her entitlement to retirement benefits under the IBM Plan.  The

23   parties agree that Plaintiff was vested in the IBM Plan.  Their central disagreement is whether

24   Plaintiff's right to pension benefits terminated when she stopped working for IBM.  Defendants

25   contend that Plaintiff's pension rights terminated because she transferred employment from IBM

26   to another company as a result of the sale of the IBM business unit where she had been working.

27   According to Defendants, Plaintiff's IBM Plan assets were transferred to her subsequent

28

United States District Court
Northern District of California

employer's benefit plan as part of that transaction.  Plaintiff contends that she did not end her employment with IBM as part of an IBM asset sale; instead, she voluntarily quit IBM to take a job with Siemens, which happened to be the same company that eventually ended up purchasing her former IBM business unit.  Plaintiff argues that she is entitled to pension benefits, as evidenced by the many IBM Plan benefit notices that she received over the years from 1999 until she made a claim for benefits in 2013.  She asserts that if the IBM Plan transferred her pension assets to another employer, it had no right to do so.

### A.   Plaintiff's Employment History

Plaintiff began working for ROLM Corporation ("ROLM") on January 24, 1980.  In 1984, IBM acquired ROLM; as a result of that acquisition, Plaintiff became an IBM employee and a participant in the IBM Plan.  For example, documentation from 1988 shows that Plaintiff was classified as an IBM employee, assigned an IBM employee number, and identified as an IBM employee on her paychecks and W-2 statements.

After leaving IBM on February 15, 1990[1], Plaintiff went to work at Siemens PN as the Director of Voice Data Solutions Marketing.  Plaintiff worked at Siemens PN from February 19, 1990 until July 24, 1997, and became a vested participant in the Siemens Retirement Plan.  On February 1, 2012, Plaintiff began receiving a monthly benefit under the Siemens Retirement Plan which was calculated based on an employment history from January 24, 1980 to July 24, 1997, even though Plaintiff did not begin working for Siemens until February 19, 1990.

### B.   Plaintiff's Claim for Benefits Under the IBM Plan

In the years following her separation from IBM, the IBM Plan sent Plaintiff numerous communications stating that she had a vested benefit under that plan.  These communications include an August 31, 1999 fax of a notice of deferred vested benefit in the amount of $978.90

---

[1] The Plan Administrator acknowledged that Plaintiff left her employment with IBM on February 15, 1990.  *See* Administrative Record ("AR") 12, 123.  However, in their briefing, Defendants step away from acknowledgement of the February 15, 1990 date, and instead state that "Plaintiff was an employee who was part of [a transfer of 8000 employees from IBM to ROLM] on September 30, 1989."  Defs.' MSJ at 8.  The significance of Defendants' change of position on this point will become clear in the court's discussion of Plaintiff's first cause of action.

[AR 111-113]; an August 27, 1999 cover letter enclosing materials on retirement [AR 100]; a December 14, 2010 cover letter for a mailing regarding the IBM Plan summary annual report and summary plan description [AR 60]; an April 29, 2011 letter enclosing a copy of the 2010 annual funding notice for the IBM Plan [AR 61-67]; an October 14, 2011 notice of a vested benefit in the IBM Plan [AR 68]; an October 24, 2011 monthly pension benefit estimate of $978.90 [AR 69-81]; a January 6, 2012 letter from IBM informing Plaintiff that she had an outstanding vested benefit under the IBM Plan [AR 82]; an April 26, 2012 IBM Plan annual funding notice [AR 83]; and a March 12, 2013 monthly pension benefit estimate of $978.90 [AR 84-96]. The monthly pension benefit estimates state "we have estimated your benefits payable from the Plan based on certain detailed assumptions and data that IBM has in its personnel records. If these records contain any errors, the amounts shown are subject to change." *See* AR 69-81; 84-96.

On April 2, 2013, Plaintiff sent a Pension Election Confirmation package to the IBM Employee Services Center. On July 10, 2013, Plaintiff called the IBM Employee Services Center and was told that she was not eligible to receive a benefit under the IBM Plan. Plaintiff sent a letter dated August 12, 2013 to the Plan Administrator requesting a written explanation of the basis for the denial of her claim.

On October 1, 2013, the Plan Administrator sent Plaintiff a denial letter, explaining that Plaintiff had terminated her employment with IBM in 1990 pursuant to an agreement between IBM and ROLM, which included a pension asset transfer of Plaintiff's IBM employment service to ROLM for inclusion in any subsequent ROLM pension benefit calculation. The letter stated that because the IBM Plan had already paid a benefit on Plaintiff's behalf for her service from January 24, 1980 to February 15, 1990, Plaintiff was ineligible for any future IBM pension benefit or service calculations. Finally, the letter explained that ROLM had since been acquired by Siemens, and that IBM had made an inquiry to Siemens and determined that Plaintiff was receiving Siemens pension benefits that included her previous IBM service dates. AR 12-15.

On October 8, 2013, Plaintiff's attorneys sent a letter to the Plan Administrator requesting documents related to her claim for benefits. On November 11, 2013, the Plan Administrator responded to Plaintiff's request by forwarding a July 9, 2013 email exchange between Siemens

3

and the IBM Plan that confirmed that Plaintiff's Siemens pension was based on service from 1980 to 1997, plus copies of the 1989 and 1994 IBM Retirement Plans.  Plaintiff requested a copy of the 1990 purchase agreement between IBM and ROLM that was referenced in the denial of her claim, but the Plan Administrator did not provide one.

Plaintiff appealed the denial of her claim for IBM Plan benefits on December 3, 2013.  On March 6, 2014, the Plan Administrator upheld the denial of Plaintiff's claim.

On June 24, 2014, Plaintiff filed a complaint against IBM and the IBM Plan alleging four causes of action.  Plaintiff's first cause of action is for recovery of plan benefits under 29 U.S.C. § 1132(a)(1)(B).  Her second cause of action, brought against IBM only, is for breach of fiduciary duties under 29 U.S.C. § 1104.  Plaintiff's third cause of action is for equitable relief under 29 U.S.C. § 1132(a)(3).  Her fourth cause of action is for failure to provide requested plan information under 29 U.S.C. § 1132(c).

## II.      LEGAL STANDARD

The conventional summary judgment standard applies to Plaintiff's second, third, and fourth causes of action.  A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  A genuine factual issue exists if, taking into account the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor.  *Id.* at 248.  The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact.  *See Id.* at 249.

To defeat summary judgment once the moving part has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists.  *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In other words, there must exist more than "a scintilla of evidence"

United States District Court
Northern District of California

1  to support the non-moving party's claims. *Anderson*, 477 U.S. at 252. Conclusory statements

2  without factual support are insufficient to defeat a motion for summary judgment. *Surrell v. Cal.*

3  *Water Serv. Co.,* 518 F.3d 1097, 1103 (9th Cir. 2008). Similarly, "[w]hen opposing parties tell

4  two different stories, one of which is blatantly contradicted by the record, so that no reasonable

5  jury could believe it, a court should not adopt that version of the facts" when ruling on the motion.

6  *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

7        On an issue where the nonmoving party will bear the burden of proof at trial, the moving

8  party can prevail merely by pointing out to the district court that there is an absence of evidence to

9  support the nonmoving party's case. *Celotex*, 477 U.S. at 324-25; *Soremekun v. Thrifty Payless,*

10 *Inc.,* 509 F.3d 978, 984 (9th Cir. 2007). If the moving party meets its initial burden, the opposing

11 party must then set out specific facts showing a genuine issue for trial in order to defeat the

12 motion. *Anderson*, 477 U.S. at 250; *Soremekun*, 509 F.3d at 984; *see* Fed.R.Civ.P. 56(c),(e). The

13 opposing party's evidence must be more than "merely colorable" and must be "significantly

14 probative." *Anderson*, 477 U.S. at 249-50. Further, the opposing party may not rest upon mere

15 allegations or denials of the adverse party's evidence, but instead must produce admissible

16 evidence showing there is a genuine dispute of material fact for trial. *Nissan Fire & Marine Ins.*

17 *Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). Disputes over irrelevant or

18 unnecessary facts will not preclude a grant of summary judgment. *T.W. Elec. Serv.*, 809 F.2d at

19 630.

20        A different standard applies to Plaintiff's first claim for benefits under the IBM Plan. In

21 the ERISA context, summary judgment generally is the vehicle for deciding the case; the factual

22 determination of eligibility for benefits is decided solely on the administrative record, and "the

23 non-moving party is not entitled to the usual inferences in its favor." *Gilliam v. Nevada Power*

24 *Co.*, 488 F.3d 1189, 1192 n.3 (9th Cir. 2007); *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942

25 (9th Cir. 1999) *overruled on other grounds by Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955,

26 965 (9th Cir. 2006) (en banc).

27        Where, as here, the parties have each filed motions for summary judgment, "[e]ach motion

28 must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside*

United States District Court
Northern District of California

1    *Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  "In fulfilling its duty to review each cross-motion

2    separately, the court must review the evidence submitted in support of each cross-motion."  *Id.*

3                                    **III.    DISCUSSION**

4            Defendants move for summary judgment on all four of Plaintiff's claims.  Plaintiff moves

5    for summary judgment on her first and fourth claim.

6        A.   **Plaintiff's First Claim: Recovery of Plan Benefits Under 29 U.S.C. § 1132(a)(1)(B)**

7                 **1.   ERISA Standard of Review**

8            ERISA allows a participant in an employee benefit scheme to bring a civil action to

9    recover benefits due under the terms of a plan.  29 U.S.C. § 1132(a)(1)(B).  The court applies a de

10   novo standard of review to actions for the recovery of ERISA benefits, unless the plan in question

11   grants discretionary authority to the trustee or fiduciary.  *Firestone Tire & Rubber Co. v. Bruch*,

12   489 U.S. 101, 114–15 (1989).  If a plan unambiguously grants the plan administrator discretionary

13   authority to construe the plan's terms, the court reviews the matter for an abuse of discretion.

14   *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008).  The parties stipulated that the abuse of

15   discretion standard applies to Plaintiff's first cause of action.  Docket No. 34.

16           In applying an abuse of discretion standard, the court's review is limited to the record

17   before the plan administrator.  *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income*

18   *Prot. Plan*, 349 F.3d 1098, 1110 (9th Cir. 2003) (citing *McKenzie v. General Tel. Co.,* 41 F.3d

19   1310, 1316 (9th Cir.1994)).  For this reason, in analyzing this claim, the court will not review any

20   evidence outside the administrative record.[2]  Under the abuse of discretion standard, a plan

21   administrator's decision "'will not be disturbed if reasonable.'"  *Day v. AT&T Disability Income*

22   *Plan*, 698 F.3d 1091, 1096 (9th Cir. 2012) (quoting *Conkright v. Frommert*, 559 U.S. 506 (2010)).

23   This standard requires deference to the administrator's decision unless it is "(1) illogical, (2)

24   implausible, or (3) without support in inferences that may be drawn from the facts in the record."

25   *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 929 (9th Cir. 2012) (quoting *Salomaa v.*

26

27   _____
     [2] Thus, the court will not consider the information outside the administrative record relied on by
     Defendants, including the declaration of William Carlough, the declaration of Mitchell Boomer,
28   Plaintiff's deposition testimony taken during the litigation, and the redacted version of the Master
     Business Agreement between IBM and Siemens.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   *Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011).  However, "ERISA plan

2   administrators do not have unbounded discretion."  *Booton v. Lockheed Medical Ben. Plan*, 110

3   F.3d 1461, 1463 (9th Cir. 1997).  They must obtain relevant information to make the decision, ask

4   for more information if it is needed, and engage in a meaningful dialogue with their beneficiaries.

5   Failure to do so amounts to an abuse of discretion.  *Id.* at 1463-1465.

6          When reviewing for an abuse of discretion, the court must consider any conflict of interest.

7   Plaintiff asserts, and Defendants do not dispute and therefore concede, the existence of a conflict

8   of interest.  IBM established a trust fund from which IBM Plan benefits are provided.  The same

9   entity that funds the IBM Plan also evaluates claims, thereby creating a structural conflict of

10  interest.  *Metro. Life Ins. Co.,* 554 U.S. at 112.  This is because the employer "both decides who

11  gets benefits and pays for them, so it has a direct financial incentive to deny claims."  *Saffon v.*

12  *Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 868 (9th Cir. 2008).  This is true

13  even though the funds flow through a separate trust.  *See Burke v. Pitney Bowes Inc. Long–Term*

14  *Disability Plan,* 544 F.3d 1016, 1026 (9th Cir. 2008).

15         In the Ninth Circuit, the existence of a conflict of interest is a factor to be weighed in

16  determining whether there was an abuse of discretion.  *Abatie v. Alta Health & Life Ins. Co.*, 458

17  F.3d 955, 965 (9th Cir. 2006) (en banc); *Montour v. Hartford Life & Acc. Ins. Co.*, 588 F.3d 623,

18  631 (9th Cir. 2009).  The presence of a conflict does not convert abuse of discretion review into de

19  novo review, but it does mean that a reviewing court must consider "the conflict of interest in

20  deciding how skeptical to be of the administrator's decision."  *Salomaa*, 642 F.3d at 675.  The

21  weight a reviewing court accords to a conflict varies "based on the degree to which the conflict

22  appears improperly to have influenced a plan administrator's decision."  *Montour,* 588 F.3d at

23  631.

24         **2.      Analysis**

25         The business relationships between IBM, ROLM, and Siemens play a role in this case.

26  The connection between these three entities is not clear from the information contained in the

27  administrative record or from the parties' briefing.

28         The Plan Administrator explained these relationships to Plaintiff on two occasions in

7

United States District Court
Northern District of California

1    denying her claim.  In its initial denial letter, the Plan Administrator found that Plaintiff worked

2    for IBM from January 24, 1980 to February 15, 1990, and that her 1990 separation from IBM was

3    the result of an agreement between IBM and ROLM that allowed Plaintiff to become an employee

4    of ROLM.  AR 12-13.  The Plan Administrator noted that ROLM was later acquired by Siemens.

5    The Plan Administrator stated that the agreement between IBM and ROLM included a transfer of

6    Plaintiff's IBM pension assets for the period of IBM service from January 24, 1980 to February

7    15, 1990, and that the asset transfer from IBM to ROLM rendered Plaintiff ineligible for pension

8    benefits from IBM for that period of service.  *Id.*

9         In its subsequent March 6, 2014 denial of Plaintiff's appeal, the Plan Administrator

10   provided a somewhat different timeline and explanation.  The Plan Administrator asserted that

11   according to IBM's records, Plaintiff worked for ROLM beginning on January 24, 1980.  AR 123-

12   126.  In November 1984, IBM acquired ROLM, and ROLM became a wholly owned subsidiary of

13   IBM.  On September 30, 1989, a portion of ROLM was sold to Siemens.  ROLM Company

14   became a joint venture between IBM and Siemens, and ROLM Systems became wholly owned by

15   Siemens.  *Id.*  As explained by the Plan Administrator, on and after September 29, 1989, "some"

16   IBM employees transferred from IBM to Siemens (including ROLM Systems), and "other" IBM

17   employees transferred from IBM to the ROLM Company.  *Id.*  Plaintiff terminated her

18   employment with IBM on February 15, 1990.  In May 1992, Siemens acquired IBM's share of the

19   ROLM Company.  *Id.*  The March 6, 2014 letter does not explain how Plaintiff's employment was

20   affected by each of these business actions, but simply concludes that Plaintiff's IBM pension

21   benefits assets were transferred to the Siemens Retirement Plan "after she stopped working for

22   IBM and started working for Siemens."  *Id.*

23        Having decided that Plaintiff, along with her IBM Plan pension assets, transferred from

24   IBM to ROLM/Siemens as part of a business transaction, the Plan Administrator determined that

25   Plaintiff was not eligible for IBM Plan benefits because she was a "Former Participant" as defined

26   by the IBM Plan.  The 1989 version of the IBM Plan discusses "Former Participant" as follows:

27

28

Appendix C - "Divestitures and Acquisitions"

I.     Divestitures

A.  Certain Participants *("Former Participants")* terminated their employment with the Company as part of the sale of parts of the Company's business operations or by the sale of a Domestic Subsidiary to another company.  As part of these transactions, some of the assets and liabilities of the IBM Retirement Plan were or will be transferred pursuant to Section 414(l) of the Code to qualified Plans of the acquiring companies... *All rights of said Former Participants and their Beneficiaries under the Plan terminate effective upon the transfer of said assets and liabilities....In no event will any Former Participant be entitled to duplicate benefits under this Plan and another employer's Plan with respect to the same period of Continuous Service or for the benefits whose liabilities were transferred to any other employer described herein.*

AR 173 (emphasis added).  Appendix C goes on to describe a number of employee groups that fall within the description of "Former Participant."  AR 173-174

Appendix C to the IBM Plan was amended in 1994.  With a few minor differences that are not pertinent to this analysis, the 1989 text of Appendix C quoted above remained the same.  Of relevance to this case, the 1994 amendment added the ROLM employee group to the definition of "Former Participants":

"Former Participants" include, but are not limited to:
....
"ROLM Employees"- Former Participants whose accrued benefits (and the Plan's assets and liabilities to provide said accrued benefits) are transferred by the Company and the fiduciaries to this Plan to either the Siemens Retirement Plan or the ROLM Retirement Plan…all as described in Section 7.2 of the Master Business Agreement Among IBM, Siemens Communications Systems, Inc., and Siemens Aktiengesellschaft, dated as of May 2, 1992.

AR 246-48.[3]

---

[3] The 1989 IBM Plan was the operative plan for Plaintiff's period of service with IBM.  The 1994 Plan was amended to address the divestiture of ROLM employees.  In denying Plaintiff's claim, the Plan Administrator relied on both plans, both of which are part of the administrative record. The Plan Administrator's initial denial, (but not the denial on appeal), also references Article 10 E of the IBM Plan, which addresses how to calculate a participant's period of service.  Article 10 E does not address benefit divestures and acquisitions, which are governed by Appendix C.  Since the Plan Administrator's initial decision was based on a finding that the benefits were divested from IBM, Article 10 E is not applicable.

1    The starting point in any ERISA benefits analysis is the Plan language.  See *Day*, 698 F.3d

2    at 1096-97.  Under the plain language of the IBM Plan, if Plaintiff is a Former Participant, then

3    her rights to benefits terminated "upon the transfer" of her IBM Plan benefits to her transferee

4    employer's benefit plan.  As a Former Participant, the IBM Plan would also prohibit her receipt of

5    duplicate benefits from the IBM Plan and the other employer for the same period of covered

6    service.  Simply put, if Plaintiff is a Former Participant, the analysis is straightforward.  She would

7    have no rights to benefits based on the express language of the IBM Plan.

8         But therein lies the rub.

9         Plaintiff contends that she is not a Former Participant because she did not terminate her

10   employment with IBM by transferring to ROLM or Siemens as part of an asset sale.  According to

11   Plaintiff, the administrative record clearly shows that she independently separated from IBM and

12   became an employee of Siemens PN in February 1990, more than two years before the sale that is

13   documented in the 1992 Master Business Agreement referenced in Appendix C of the 1994

14   version of the IBM Plan.  Plaintiff points to the following record evidence in support of her

15   contention: 1) her declaration stating that she voluntarily resigned from IBM on February 15, 1990

16   and began work at Siemens on February 19, 1990 [AR 43]; 2) her W-2 forms showing that she

17   was employed by IBM until she resigned in February 1990 [AR 48-58]; 3) the May 2, 1992 date

18   of execution of the Master Business Agreement between IBM and ROLM; 4) her declaration

19   stating that she never received a notice from IBM or Siemens that her IBM Plan benefits had been

20   transferred [AR 43-47]; and 5) the numerous statements over the years sent to Plaintiff by IBM

21   stating that she was still a participant in the IBM Plan and estimating the specific benefit that

22   would be paid to Plaintiff by the IBM Plan upon her retirement [AR 59-118].

23        According to Plaintiff, since she did not transfer employment as part of the sale of an IBM

24   business unit to ROLM, she is not a "Former Participant" as defined by the Plan.  As such, her

25   benefits under the IBM Plan did not terminate.

26        Defendants largely ignore Plaintiff's evidence about the timing and reasons for her move

27   from IBM to Siemens in February 1990.  They do not attempt to counter her assertion with IBM

28   personnel records or other direct evidence that Plaintiff's employment with IBM actually

United States District Court
Northern District of California

terminated as a result of the sale and transfer of assets to ROLM or Siemens.  In fact, the Plan Administrator's denial letters acknowledge that Plaintiff worked for IBM until February 15, 1990 [AR 12, 123], and Defendants stipulated that Plaintiff began working at Siemens on February 19, 1990.  These events occurred after the September 30, 1989 transfer of employees from IBM to ROLM/Siemens that Defendants allege was a part of the May 2, 1992 asset sale between IBM and Siemens.  Yet, in the face of these undisputed and objective facts, Defendants still fail to respond to Plaintiff's argument that her date of termination from IBM does not correspond to the date of the transfer of IBM employees, or to the date of the sale of IBM's business.

Instead, Defendants' position rests on an inference they draw from Siemens' representation.  The Plan Administrator contacted the Siemens Retirement Plan about Plaintiff's claim, and received an email from Siemens which stated: "We do have a monthly benefit for her of $2,622.71.  Her employment history is active from 1-24-1980 terminated 7-24-1997."  AR 24.  From this Siemens email, the Plan Administrator assumed that Plaintiff *must* have transferred from IBM, and her IBM Plan benefits *must* have been transferred with her as part of the asset sale, because she has been receiving benefits under the Siemens plan based on an employment history that includes her dates of service with IBM.

Thus, in its initial denial, the Plan Administrator reasoned that "[s]ince the agreement with ROLM included an asset transfer of your accrued pension benefit, IBM already paid a benefit on your behalf based on the period of service from January 24, 1980 to February 15, 1990.  The asset transfer to ROLM made that period of service ineligible for inclusion in any future IBM pension benefit or service calculations.  ROLM has since been acquired by Siemens.  *According to the information provided by Siemens, you have been in pay with a pension since February 1, 2012, that includes your previous IBM service dates.*"  AR 12-13 (emphasis added).

The Plan Administrator's denial of Plaintiff's appeal gives similar reasons:

> Siemens has informed us that Ms. Gurasich's pension benefit under the Siemens Retirement Plan is based, in part, on her period of service with IBM on and before February 15, 1990, since her liabilities under the Plan were transferred to the

United States District Court
Northern District of California

1
2
3
4

> *Siemens Retirement Plan.*[4]  Since Ms. Gurasich's liabilities under the Plan were transferred to the Siemens Retirement Plan, the liabilities no longer exist in the Plan and Ms. Gurasich is not entitled to a benefit under the Plan.  *If Ms. Gurasich's benefit under the Plan was not transferred to the Siemens Retirement Plan, Ms. Gurasich would be receiving a smaller benefit under the Siemens Retirement Plan since her benefit under the Siemens Retirement Plan would be based only on service after February 15, 1990.*

5  AR 124-125 (emphasis added).

6          The Plan Administrator assumed that Plaintiff's benefit assets must have been transferred,

7  because Siemens otherwise would have no reason to give Plaintiff credit for the ten years of

8  service (1980 to 1990) that she spent working for ROLM and IBM, and not for Siemens.  The

9  question then becomes whether the Plan Administrator acted within its discretion in resting its

10 denial on an inference drawn from Siemens' representation, rather than Defendants' own records.

11 Defendants argue that the Plan Administrator made a reasonable inference that Plaintiff's IBM

12 Plan benefits must have been transferred to ROLM/Siemens.  They assert that the Plan

13 Administrator did not have an affirmative duty to investigate or respond to Plaintiff's evidence

14 that she was not a "Former Participant."

15         The court disagrees.  The Plan Administrator is not entitled to rest its decision on an

16 inference when it had the ability to confirm the facts themselves, especially where Plaintiff

17 provided concrete contrary evidence that she did not change employment through a business

18 transfer.  *Kunin v. Benefit Trust Life Ins. Co.,* 910 F.2d 534, 538 (9th Cir.1990) (burden is on plan

19 to obtain adequate information to make decision).  Denial of benefits without relevant information,

20 especially personnel and benefits records in the control of a plan administrator, amounts to an

21 abuse of discretion.  *Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463-64 (9th Cir. 1997)

22 (observing that "[l]acking necessary – and easily obtainable – information, Aetna made its

23 decision blindfolded," and finding that denial of a claim without obtaining relevant information is

24 an abuse of discretion).

25         Defendants do not cite to evidence demonstrating that the Plan Administrator checked

26

27
28

---

[4]  This sentence is a stretch, for Siemens did not confirm that "[Plaintiff's] liabilities under the Plan were transferred to the Siemens Retirement Plan." That is wholly the Plan Administrator's conclusion.  Siemens only confirmed that Plaintiff was receiving benefits based on a period of service dating back to 1980.

United States District Court
Northern District of California

1    IBM employment records to verify the circumstances of Plaintiff's separation from employment.

2    *See* Defs.' MSJ at 8; MSJ Reply at 8; Opp. to Pl.'s MSJ at 5 (describing actions taken by the Plan

3    Administrator to determine Plaintiff's eligibility for benefits under the IBM Plan).  Defendants

4    also fail to identify evidence that the Plan Administrator investigated whether Plaintiff's pension

5    benefits actually transferred to a ROLM or Siemens plan, even though there is reason to believe

6    that such information may exist.  *Id.*  ERISA section 209 required IBM to indefinitely maintain

7    any and all records "sufficient to determine the benefits due or which may become due."  29

8    U.S.C. § 1059(a)(1).  IBM repeatedly sent Plaintiff monthly benefit estimates of $978.90 under the

9    IBM Plan, and those notices state that "we have estimated your benefits payable from the Plan

10   based on certain detailed assumptions and *data that IBM has in its personnel records*."  *See* AR

11   69-81; 84-96, 111-113 (emphasis added).

12        Defendants cite two Fifth Circuit cases for the proposition that the Plan Administrator had

13   no affirmative duty to investigate a plaintiff's claim for benefits under the plan.  *Truitt v. Unum*

14   *Life Ins. Co. of Am.*, 729 F.3d 497, 509-512, n.7 (5th Cir. 2013), *cert.* denied, 134 S. Ct. 1761

15   (2014) (holding that the administrator did not have an affirmative duty to investigate the accuracy

16   of third party information about a claimant's physical condition); *Vega v. Nat'l Life Ins. Servs.,*

17   *Inc.*, 188 F.3d 287, 297-99 (5th Cir.1999)(en banc), *overruled on other grounds by Metro. Life Ins.*

18   *Co. v. Glenn,* 554 U.S. 105 (2008) (holding that if the claimant has relevant information in her

19   control, it is not only inappropriate but inefficient to require the administrator to obtain that

20   information in the absence of her active cooperation and noting that the information at issue from

21   claimant's personal physician could more easily have been obtained by the claimant than by the

22   administrator).

23        This court is bound by Ninth Circuit law, not that of the Fifth Circuit.  In any event, the

24   Fifth Circuit's rulings in *Truitt* and *Vega* are not inconsistent with this court's holding.  Those

25   cases eschew the creation of an affirmative obligation on the part of the plan administrator to

26   investigate the applicant's claim related to information about the claimant's physical condition that

27   was outside of the administrator's control.  Neither of these cases addressed the issue of a plan

28   administrator's obligation to review its own personnel records.  Following Ninth Circuit

13

1    precedent, this court finds that IBM abused its discretion by assuming objectively confirmable

2    facts -- that Plaintiff transferred her employment as part of the sale of a business, and that her IBM

3    Plan assets transferred to ROLM or Siemens as a result of that sale -- rather than verifying them

4    through review, or at least attempted review, of information within its own control.  In light of

5    Plaintiff's submission of evidence that her employment with Siemens was unrelated to the sale of

6    an IBM business unit, IBM could not rely on an inference, at least not without having consulted its

7    own records first.

8         Defendants attempt to shift responsibility to Plaintiff, pointing out that Plaintiff never

9    explained why she was receiving benefits under the Siemens plan for service beginning January

10   24, 1980.  They argue that Plaintiff never submitted her Siemens plan documents, which could

11   have established that her benefits under the Siemens plan do not reflect a transfer of benefits from

12   IBM to Siemens.  However, Defendants never requested that Plaintiff submit the terms of her

13   Siemens plan, and thus cannot base its denial on Plaintiff's failure to do so.  *See* 29 C.F.R. §

14   2560.503-1(g)(1)(iii) (notification of adverse benefit determination shall include a description of

15   any additional material or information necessary for the claimant to perfect the claim and an

16   explanation of why such material or information is necessary); *Booton*, 110 F.3d at 1465 (if the

17   plan is unable to make a rational decision on the basis of the materials submitted by the claimant,

18   it must explain what else it needs).  Where the relevant information is within the Plan

19   Administrator's control, it is not appropriate for the Plan Administrator to shift the burden to

20   Plaintiff to prove that IBM did not transfer her benefits.

21        Moreover, Plaintiff asserts that even if the IBM Plan did transfer her benefits, it did not

22   have the authority to do so, because she was not a Former Participant under the terms of the Plan.

23   Plaintiff contends, and Defendants do not address and therefore concede, that the IBM Plan only

24   allowed transfers of benefits for "Former Participants."  AR 173.  Plaintiff notes that except for the

25   exemption carved out for "Former Participants," under Article 22 of the IBM Plan, "[n]o benefit

26   payable under the Plan shall be subject to alienation, sale, transfer, assignment, pledge,

27   attachment, garnishment, lien, levy or like encumbrance."  AR 163.

28        It is impossible to ignore the undisputed fact that Plaintiff has been receiving ten extra

United States District Court
Northern District of California

14

United States District Court
Northern District of California

years of service credit through her Siemens Retirement Plan benefits.  The Siemens plan is not part of the administrative record, but it is hard to believe that it provides such generous terms.  The court notes the possibility that the IBM Plan erroneously transferred Plaintiff's pension assets to ROLM/Siemens without her authorization, after mistakenly concluding that she transferred from IBM as part of the business unit sale.  If Siemens has been overpaying Plaintiff's pension benefits due to an unauthorized transfer by the IBM Plan, that is not a matter that can be sorted out here.

The court's finding that IBM abused its discretion by rendering a decision without the benefit of information within its control is further buttressed by consideration of the structural conflict.  Indeed, in *Abatie*, the Ninth Circuit expressly noted that a court may weigh a structural conflict more heavily if the administrator "fails adequately to investigate a claim or ask the plaintiff for necessary evidence."  *Abatie*, 458 F.3d at 968; *Booton,* 110 F.3d at 1463–64 and n.6 (in discussing defendant's failure to investigate, court notes that "[a]lthough we do not find that Aetna's actions were malicious, we are concerned that it had little incentive to come to grips with Booton's claims.").[5]

In sum, the court finds that the Plan Administrator abused its discretion by denying Plaintiff's claim based on an inference drawn from another employer's records, rather than reviewing records within its own control.  In reaching this conclusion, the court gives some weight to the structural conflict, as the Plan Administrator failed to adequately investigate the claim even though Plaintiff brought concrete and undisputed factual discrepancies to its attention.

---

[5] In one respect, the Plan Administrator gave "inconsistent reasons for denial," which also permits the reviewing court to weight a structural conflict more heavily.  *Abatie*, 458 F.3d at 966-67.  The initial denial letter states that the transfer of Plaintiff's benefits occurred pursuant to an agreement between IBM and ROLM.  AR 12.  ("Your separation from IBM in 1990 was the result of an agreement between *IBM and ROLM* that allowed you to become an employee of ROLM.  The agreement also included a pension asset transfer that was essentially a transfer of your IBM employment service to ROLM for inclusion in any subsequent ROLM pension benefit calculations for you." (emphasis added)).  On appeal, the Plan Administrator said that the agreement was between IBM and Siemens.  AR 124.  ("The transfer of Ms. Gurasich's liabilities under the Plan was a result of an agreement between *IBM and Siemens* to transfer a portion of IBM's business to Siemens and a portion to the ROLM Company joint venture").  This difference should have underscored the importance of investigating the exact circumstances of Plaintiff's movement from IBM to Siemens, especially in light of the fact that Plaintiff presented concrete evidence demonstrating that she was not transferred as part of a sale.

**B.    Plaintiff's Second and Third Claims: Breach of Fiduciary Duties Under 29 U.S.C. § 1104 and Equitable Relief Under 29 U.S.C. § 1132(a)(3)**

Defendants move for summary judgment on Plaintiff's second claim for breach of fiduciary duties and her third claim for equitable relief.  Plaintiff concedes that because the court has awarded her benefits under the IBM Plan in her first cause of action, she is not entitled to further relief under her second and third claims.  Pl.'s Opp'n to Defs.' MSJ at 13.  Therefore, the court need not reach these issues.

**C.    Plaintiff's Fourth Claim: Failure to Provide Requested Plan Information Under 29 U.S.C. § 1132(c)**

Plaintiff brings a claim for statutory penalties pursuant to 29 U.S.C. § 1132(c)(1)(B), based on Defendants' undisputed failure to produce the Master Business Agreement ("MBA") during the administration of Plaintiff's claim.  Both Plaintiff and Defendants move for summary judgment on this cause of action.

The MBA is the May 2, 1992 agreement between IBM, Siemens Communication Systems, Inc., and Siemens Aktiengesellschaft that is referenced in Appendix C of the 1994 version of the IBM Plan.[6]  AR 246.  Although not specifically identified, the Plan Administrator referenced the MBA in the initial denial letter as well as the denial of Plaintiff's appeal.  The October 1, 2013 initial denial letter stated that "[y]our separation from IBM in 1990 was the result of an agreement between IBM and ROLM that allowed you to become an employee of ROLM.  The agreement also included a pension asset transfer that essentially was a transfer of your IBM employment service to ROLM for inclusion in any subsequent ROLM pension benefit calculations for you."  AR 12.  In the denial of Plaintiff's appeal for benefits, the Plan Administrator referenced an "agreement between IBM and Siemens to transfer a portion of IBM's business to Siemens and a portion to the ROLM Company joint venture."  AR 124.

Plaintiff asserts that Defendants violated two separate ERISA disclosure requirements which should result in an award of civil penalties under section 1132(c)(1)(B).  First, she argues

---

[6] The court is not able to review the entire MBA because neither party submitted a full copy of the document as part of the summary judgment record.  Defendants filed Section 7.2 of the MBA.  It is heavily redacted.  Carlough Decl. Ex. C [Docket No. 39-1].

United States District Court
Northern District of California

1    that Defendants were required to produce the MBA during the administration of her claim

2    pursuant to 29 U.S.C. § 1024(b)(4).  Second, she contends that Defendants' failure to produce the

3    MBA resulted in a violation of 29 C.F.R. § 2560.503–1, which is an implementing regulation for

4    29 U.S.C. § 1133.  Defendants respond that Plaintiff's claim fails as a matter of law because

5    section 1024(b)(4) does not require production of the MBA, and because violations of 29 C.F.R. §

6    2560.503–1 are not enforceable through the civil enforcement penalty provision in section

7    1132(c)(1).

8         29 U.S.C. § 1132(c)(1)(B) renders a plan administrator liable for civil penalties for failure

9    to comply with its disclosure requirements.  The section states: "[a]ny administrator ... who fails or

10   refuses to comply with a request for any information which such administrator is required by this

11   subchapter to furnish to a participant or beneficiary.... may in the court's discretion be personally

12   liable to such participant or beneficiary in the amount of up to $100 a day[7] from the date of such

13   failure or refusal, and the court may in its discretion order such other relief as it deems proper."

14   29 U.S.C. § 1132(c)(1)(B).  As a statutory penalty provision, section 1032(c)(1) must be strictly

15   construed.  *Serpa v. SBC Telecomm., Inc.*, No. C03-4223 MHP, 2004 WL 3204008, at *3 (N.D.

16   Cal. Dec. 8, 2004) (collecting cases).

17        As an initial matter, the court notes that the plain language of section 1132(c)(1) authorizes

18   liability for civil penalties only against the plan "administrator," which in this instance is IBM (see

19   Compl. ¶ 3 [Docket No. 1]; Amended Answer ¶ 3 [Docket No. 28]).  For this reason, the IBM

20   Plan is not a proper defendant; the court will analyze this claim only as to IBM, as the Plan

21   Administrator.

22                      **1.  IBM Was Not Required to Produce the MBA Under Section 1024(b)(4).**

23   Section 1024(b)(4)'s disclosure requirement states, in pertinent part:

24        The administrator shall, upon written request of any participant or beneficiary, furnish a
         copy of the latest updated summary[] plan description, and the latest annual report, any
25        terminal report, the bargaining agreement, trust agreement, *contract, or other instruments*

26

27   _____

28   [7] By regulation, the maximum penalty is now $110 per day.  29 C.F.R. § 2575.502c-3.

1

*under which the plan is established or operated.*[8]

2

29 U.S.C. § 1024(b)(4) (emphasis added).

3

Plaintiff argues that the MBA falls within the purview of section 1024(b)(4) because it is a

4

"contract or other instrument under which the plan is established or operated."  According to

5

Plaintiff, IBM's failure to provide the MBA therefore results in a violation of section 1024(b)(4)'s

6

disclosure requirement.

7

The Ninth Circuit narrowly construes the disclosures required by section 1024(b)(4).  In

8

*Hughes Salaried Retirees Action Committee v. Administrator of the Hughes Non–Bargaining*

9

*Retirement Plan,* 72 F.3d 686 (9th Cir.1995) (en banc), the Ninth Circuit noted that the Supreme

10

Court "characterized the documents subject to [section 1024(b)(4)'s] disclosure requirements as

11

'governing plan documents,'" which are those that "provide individual participants with

12

information about the plan and benefits."  72 F.3d at 689-90, (citing *Curtiss-Wright Corp. v.*

13

*Schoonejongen,* 514 U.S. 73 (1995)).  The *Hughes* en banc decision rejected the original panel's

14

interpretation that the statute requires disclosure of all documents that are "critical to the operation

15

of the plan," holding that such a generalized disclosure obligation would mandate production of

16

nearly any conceivably related document.  *Id.* at 690.  The en banc court held instead that section

17

1024(b)(4) "requires the disclosure of only the documents described with particularity [in the

18

statute] and 'other instruments' similar in nature" to the specifically described documents.  *Id.* at

19

691.

20

The Ninth Circuit reinforced its narrow reading of section 1024(b)(4)'s disclosure

21

requirement in *Shaver v. Operating Engineers Local 428 Pension Trust Fund.*  332 F.3d 1198,

22

1201-02 (9th Cir. 2003) (applying the interpretive principle of *ejusdem generis* to the term "other

23

instruments," noting that the statute "mentions only legal documents that describe the terms of the

24

plan, its financial status, and other documents that restrict or govern the plan's operation").  Citing

25

26

27

28

---

[8] As with section 1132(c)(1), the text of section 1024(b)(4) makes plain that the "administrator" is the only proper defendant to a claim alleging a violation of this section.  *See Moran v. Aetna Life Ins. Co.,* 872 F.2d 296, 299–300 (9th Cir. 1989).  Thus, as with section 1132(c)(1), this threshold issue prevents Plaintiff from sustaining a section 1024(b)(4) claim against the IBM Plan.

United States District Court
Northern District of California

1   *Hughes, Shaver* held that "'[other] instruments' refers to '...documents that provide individual

2   participants with information about the plan and benefits.'" 332 F.3d at 1202. *Shaver* concluded

3   that the statute did not mandate the disclosure of itemized expenditure lists, which at most related

4   "only to the manner in which the plan is operated." *Id*.

5         Therefore, to fall within the definition of "contract, or other instruments under which the

6   plan is established or operated," Plaintiff must show that the MBA "provides participants with

7   information about the plan and benefits," or otherwise qualifies as an instrument similar in nature

8   to the documents specifically enumerated in the statute.  Plaintiff puts forward no evidence of this.

9   For this reason alone, Plaintiff's claim that IBM was required to produce the MBA under section

10  1024(b)(4) fails.

11        Plaintiff also has put forth no evidence that the MBA is an instrument "under which the

12  [IBM Plan] is established or operated."  There is no evidence that the IBM Plan was "established

13  under" the MBA.  Indeed, the MBA is dated May 2, 1992, which is after the establishment of the

14  1989 IBM Plan.  AR 248.  Obviously, the 1989 IBM Plan makes no reference to the MBA.

15        Nor does Plaintiff point to any provision of the MBA suggesting that the IBM Plan was

16  "operated under" it.  Instead, Plaintiff sidesteps the statutory language by arguing that the IBM

17  Plan was "operated *according* to" the contract between IBM and Siemens, because the 1994 IBM

18  Plan makes reference to the MBA.  Pl.'s Reply in Supp. of MSJ [Docket No. 52] at 20.  But

19  "operated according to" is not the same as "operated under," which is the statutory test the court

20  must apply here.  The parties cite only one reference to the MBA in the 1994 IBM Plan.  As set

21  forth above in the court's analysis of Plaintiff's first cause of action, Appendix C to the 1994 Plan

22  identifies "Former Participants," which include certain ROLM employees whose pension benefits

23  were transferred by the IBM Plan "as described in Section 7.2 of the Master Business Agreement

24  Among IBM, Siemens Communications Systems, Inc., and Siemens Aktiengesellschaft, dated as

25  of May 2, 1992."  AR 246-48.[9]  This sole reference demonstrates that the MBA was a business

26

27  _____

    [9] Section 7.2 of the MBA merely provides that IBM will transfer the accrued pension benefit

28  liability for "each employee transferred to ROLM Company or ROLM Systems on September 30,
    1989."  Following such transfer, "the Siemens Retirement Plan and the ROLM Company

United States District Court
Northern District of California

agreement regarding the sale of a portion of IBM's business, which also allowed for a transfer of assets and liabilities for certain IBM transferred employees under the terms of the IBM Plan to either the Siemens Retirement Plan or the ROLM Retirement Plan, such that the transferred employees became "Former Participants" under the terms of the IBM Plan. AR 248.

Plaintiff does not, and cannot, make an argument that the MBA somehow changed the terms of the Plan itself, or that the MBA provided information necessary for the calculation of benefits, such that the IBM Plan was "operated under" the MBA. For example, the MBA did not include any valuation information that the Plan Administrator needed to calculate benefits. *Cf. Werner v. Morgan Equip. Co.,* 15 Employee Benefits Cas. (BNA) 2295, 2301, 1992 WL 453355 (N.D.Cal.1992) (stock valuation report is an instrument under which a plan is established or operated when the plan measures benefits by the value of stock); *Lee v. Dayton Power & Light Co.,* 604 F. Supp. 987, 1002 (S.D. Ohio 1985) (manual containing charts essential to the calculation of benefits is an instrument under which the plan is established or operated).

In sum, Plaintiff has put forth no evidence to demonstrate that the MBA is an "instrument" under which the IBM Plan was "established or operated." Plaintiff has failed to establish her claim for section 1132(c)(1)(B) penalties to the extent it is based on IBM's alleged violation of section 1024(b)(4) disclosure requirements.

### 2. A Violation of 29 C.F.R. § 2560.503-1(h)(2)(iii) Does Not Trigger Liability Under 29 U.S.C. § 1132(c)(1)(B)

Plaintiff also contends that Defendants' failure to produce the MBA violated 29 C.F.R. § 2560.503–1(h)(2)(iii). Section 2560.503–1 is an implementing regulation for 29 U.S.C. § 1133, which provides that benefit plans must give adequate notice of a denial, as well as provide for full and fair review of the denial of a claim for benefits:

"In accordance with regulations of the Secretary, every employee benefit plan shall--
(1) provide adequate notice in writing to any participant or beneficiary whose claim for

---

Retirement Plan shall be solely responsible for the payment of the IBM Transferred Employees' benefits assumed by each such plan." MBA, Section 7.2, Carlough Decl. Ex. C [Docket No. 39-1 at 2].

1
2
3

benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

4       29 U.S.C.A. § 1133.

5       29 C.F.R. § 2560.503−1(h) specifies that ERISA plans must "establish and maintain a

6   procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit

7   determination to an appropriate named fiduciary of the plan, and under which there will be a full

8   and fair review of the claim and the adverse benefit determination."  In order to provide a claimant

9   with a reasonable opportunity for a full and fair review of a claim, a benefits plan must "[p]rovide

10  that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies

11  of, all documents, records, and other information relevant to the claimant's claim for benefits...."

12  29 C.F.R. § 2560.503−1(h)(2)(iii).

13      The court finds that alleged violations of 29 C.F.R. § 2560.503-1(h)(2)(iii) cannot form the

14  basis for imposition of civil penalties under 29 U.S.C. § 1132(c)(1)(B).  Section 1132(c) liability is

15  limited to the plan administrator's failure to provide information required by "this subchapter."  29

16  U.S.C. § 1132(c).  As such, it does not extend to information identified in implementing

17  regulations, such as 29 C.F.R. § 2560.503−1, which are not explicitly required in the statutory

18  subchapter.  *See, e.g., Prado v. Allied Domecq Spirits & Wine Grp. Disability Income Policy*, 800

19  F. Supp. 2d 1077, 1101 (N.D. Cal. 2011).  Nothing in the statutory scheme suggests that an

20  ERISA claimant may bring an action for civil penalties under section 1132(c) for a plan's failure

21  to comply with a regulation.  *Id.*

22      The court's decision is in line with numerous district court decisions in this circuit, like the

23  *Prado* court, which have followed the First, Third, Sixth, Seventh, and Eighth Circuits in finding

24  that a plaintiff cannot recover section 1132(c) penalties for a violation of section 1133's

25  implementing regulations.  These courts have concluded that (i) the plain language of section

26  1132(c) provides penalties only for violations of "this subchapter," which does not include

27  regulations implementing section 1133; and (ii) that section 1133, which imposes obligations only

28  on benefit plans, cannot impose liability on a plan administrator under section 1132(c).  *See Care*

United States District Court
Northern District of California

1   *First Surgical Ctr. v. ILWU-PMA Welfare Plan*, 2014 WL 6603761, at *21-23 (C.D. Cal. July 28,

2   2014) (collecting cases); *Bielenberg v. ODS Health Plan, Inc.,* 744 F. Supp. .2d 1130, 1143 (D.

3   Or. 2010) ("This court is persuaded by the reasoning of the other circuits which have addressed

4   the issue and declines to impose liability under 29 USC § 1132(c) for a violation of the regulations

5   to 29 USC § 1133"); *see also Medina v. Metro. Life Ins. Co.,* 588 F.3d 41, 48 (1st Cir. 2009) ("It is

6   well established that a violation of § 1133 and its implementing regulations does not trigger

7   monetary sanctions under § 1132(c)"); *Brown v. J.B. Hunt Transport Servs., Inc.,* 586 F.3d 1079,

8   1089 (8th Cir. 2009) ("[W]e agree with our sister circuits that a plan administrator may not be

9   penalized under § 1132(c) for a violation of the regulations to § 1133"); *Wilczynski v.*

10  *Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 405–07 (7th Cir. 1996).

11          Plaintiff relies on two cases, neither of which address the issue of whether violations of 29

12  C.F.R. § 2560.503-1(h)(2)(iii) are enforceable through section 1132(c)(1)(B).  In *Crotty v. Cook*,

13  121 F.3d 541 (9th Cir. 1997), the plaintiff's claim for section 1132(c) penalties was based on the

14  plan administrator's failure to provide the summary plan description, which is a document

15  specifically enumerated in section 1024(b)(4).  121 F.3d at 547.  *Crotty* did not reach the question

16  of whether this failure also constituted a violation of 29 C.F.R. § 2560.503-1, and if so, whether

17  such a violation would independently trigger liability under section 1132(c).  *See also Care First*

18  *Surgical Ctr.* 2014 WL 6603761, at *23 n.71 (stating that *Crotty* involved penalties for a violation

19  of section 1024, and thus was distinguishable from the plaintiff's claim that the defendant had

20  violated section 2560.503–1).  It is not clear why Plaintiff cites *Russo v. Hartford Life & Accident*

21  *Ins. Co.*, No. CIV. 00-938-LSP (CGA), 2002 WL 32138296, (S.D. Cal. Feb. 5, 2002), because the

22  case does not involve section 1132(c), or a civil penalty remedy, at all.  *Russo* discusses the duty

23  to provide information under 29 C.F.R. § 2560.503-1, and held that the defendant's failure to

24  provide required information could be remedied through supplementation of the administrative

25  record.  2002 WL 32138296, at *4-5, *8.

26          The court grants summary judgment in favor of Defendants on Plaintiff's fourth claim for

27  section 1132(c) civil penalties.

28

D.       **Remand to the ERISA Plan Administrator Is Inappropriate**

Finally, the parties disagree as to whether remand to the Plan Administrator is appropriate in light of the court's determination that the Plan Administrator abused its discretion in denying Plaintiff's claim for benefits.

"[R]emand for reevaluation of the merits of a claim is the correct course to follow when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination." *Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan,* 85 F.3d 455, 461 (9th Cir. 1996) (ordering remand where plan administrator had abused its discretion by misinterpreting the plan's definition of "total disability").   However, remand is not always appropriate.   "[A] plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts." *Grosz–Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1163 (9th Cir. 2001) (affirming district court's award of benefits and denial of request to remand where plan administrator "applied the right standard, but came to the wrong conclusion.").

In granting Plaintiff's motion for summary judgment on her claim for benefits under the IBM Plan, this court found an abuse of discretion where the Plan Administrator failed to review information under its control to investigate undisputed contradicting evidence submitted by Plaintiff.  Under such circumstances, it would be inappropriate to remand the matter to give the Plan Administrator a "second bite."

# IV.      CONCLUSION

For the foregoing reasons, the court grants summary judgment in favor of Plaintiff on her first claim for benefits under the IBM Plan, and orders the payment of benefits in accordance with this order.

The court does not reach Plaintiff's second and third causes of action, as Plaintiff concedes that if she is awarded benefits under the IBM Plan through her first claim, she is not entitled to further relief through those claims.

The court grants summary judgment in favor of Defendants on Plaintiff's fourth claim for civil penalties under 29 U.S.C. § 1132(c).

United States District Court
Northern District of California

1          **IT IS SO ORDERED.**

2     Dated: January 29, 2016

3                                                     _____

4                                                              Donna M. Ryu
                                                    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California