UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JOAN GURASICH,

          Plaintiff,

    v.

IBM RETIREMENT PLAN;
INTERNATIONAL BUSINESS
MACHINES CORPORATION;

          Defendants.

Case No.  14-cv-02911-DMR

**ORDER ON MOTION FOR
ATTORNEYS' FEES AND
PREJUDGMENT INTEREST**

Re: Dkt. No. 69

## I. INTRODUCTION

Plaintiff Joan Gurasich ("Plaintiff") brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against Defendant IBM Retirement Plan ("IBM Plan"), as well as Defendant International Business Machines Corporation ("IBM") as the Plan Administrator (collectively "Defendants").  Plaintiff prevailed on her claim for retirement benefits under the IBM Plan and now moves for attorneys' fees and prejudgment interest.  Motion for Attorneys' Fees and Prejudgment Interest ("Mot.") [Docket No. 69].

For the following reasons, Plaintiff's motion is granted in part.  Plaintiff is awarded attorneys' fees in the amount of $249,871.50 and prejudgment interest in the amount of $2,398.31.

## I.    BACKGROUND

The factual history of this case is set out fully elsewhere.[1]  A brief history follows.

### A.    Plaintiff's Employment History

Plaintiff began working for ROLM Corporation ("ROLM") on January 24, 1980.  In 1984,

---

[1] *See Gurasich v. IBM Ret. Plan*, No. 14-CV-02911-DMR, 2016 WL 362399, at *3 (N.D. Cal. Jan. 29, 2016).

United States District Court
Northern District of California

IBM acquired ROLM. As a result of that acquisition, Plaintiff became an IBM employee and a participant in the IBM Plan.

After leaving IBM on February 15, 1990, Plaintiff worked at Siemens PN from February 19, 1990 until July 24, 1997, and became a vested participant in the Siemens Retirement Plan. On February 1, 2012, Plaintiff began receiving a monthly benefit under the Siemens Retirement Plan, which was calculated based on an employment history from January 24, 1980 to July 24, 1997, even though Plaintiff did not begin working for Siemens until February 19, 1990.

**B.      Plaintiff's Claim for Benefits Under the IBM Plan**

In the years following her separation from IBM, the IBM Plan sent Plaintiff numerous communications stating that she had a vested benefit under that plan. On April 2, 2013, Plaintiff sent a Pension Election Confirmation package to the IBM Employee Services Center. On July 10, 2013, Plaintiff called the IBM Employee Services Center and was told that she was not eligible under the IBM Plan. Plaintiff requested a written explanation of the basis for the denial of her claim. On October 1, 2013, the Plan Administrator sent Plaintiff a denial letter, explaining that Plaintiff had terminated her employment with IBM in 1990 pursuant to an agreement between IBM and ROLM, which included a pension asset transfer of Plaintiff's IBM employment service to ROLM for inclusion in any subsequent ROLM pension benefit calculation. The letter stated that, because the IBM Plan had already paid a benefit on Plaintiff's behalf for her service from January 24, 1980 to February 15, 1990, Plaintiff was ineligible for any future IBM pension benefit or service calculations. Finally, the letter explained that ROLM had since been acquired by Siemens, and that IBM had made an inquiry to Siemens and determined that Plaintiff was receiving Siemens pension benefits that included her previous IBM service dates.

On October 8, 2013, Plaintiff's attorney, Kathryn Curry ("Curry"), sent a letter to the Plan Administrator requesting documents related to her claim for benefits. On November 11, 2013, the Plan Administrator responded to Plaintiff's request by forwarding a July 9, 2013 email exchange between Siemens and the IBM Plan that confirmed that Plaintiff's Siemens pension was based on service from 1980 to 1997, plus copies of the 1989 and 1994 IBM Retirement Plans. Curry requested a copy of the 1990 purchase agreement between IBM and ROLM that was referenced in

2

United States District Court
Northern District of California

1  the denial of her claim, but the Plan Administrator did not provide one.

2    Plaintiff, through Curry, appealed the denial of her claim for IBM Plan benefits on

3  December 3, 2013.  On March 6, 2014, the Plan Administrator upheld the denial of Plaintiff's

4  claim.

5  ### C.    Procedural History

6    On June 24, 2014, Plaintiff, through her attorneys Curry and Tracy Tierney ("Tierney"),

7  filed a complaint against Defendants asserting four claims under ERISA: 1) recovery of Plan

8  Benefits pursuant to 29 U.S.C. § 1132(a)(1)(B); 2) breach of fiduciary duties pursuant to 29

9  U.S.C. § 1104; 3) equitable relief pursuant to 29 U.S.C. § 1132(a); and 4) failure to provide

10  requested plan information pursuant to 29 U.S.C. § 1132(c).

11    Defendants filed a motion for partial dismissal, which the court denied.  [Docket Nos. 18,

12  24.]  Defendants subsequently moved for summary judgment on all four of Plaintiff's claims, and

13  Plaintiff made a cross motion for summary judgment on her first and fourth claims.  [Docket Nos.

14  35, 42.]  The court issued an order granting summary judgment to Plaintiff on her first claim for

15  recovery of plan benefits, denying as moot her second and third claims for equitable relief, and

16  granting summary judgment to Defendants on the fourth claim for failure to provide requested

17  plan information.  Order on Motions for Summary Judgment ("MSJ Order") [Docket No. 60].  On

18  February 11, 2016, the court entered judgment awarding Plaintiff past due benefits under the IBM

19  Plan in the amount of $47,966.10, as well as future benefits pursuant to the terms of the Plan

20  (providing for monthly payment of $978.90).  [Docket No. 65.]  Plaintiff filed a Bill of Costs, and

21  the Clerk granted $400.00 in taxable costs against Defendants.  [Docket Nos. 68, 76.]  Plaintiff

22  subsequently filed the present motion, requesting an award of attorneys' fees pursuant to 29

23  U.S.C. § 1132(g) in the amount of $285,160.50, consisting of $276,958.00[2] for work through the

24  Motion, and $8,202.50 for work on the Reply brief.  Plaintiff also seeks $7,672.36 in prejudgment

25  interest.  Mot. at 15-16.

26

27  _____

28  [2] Plaintiff requested $273,650 in fees at page 15 of her motion and $278,258.00 at page 17.  The court will use $276,958.00, which is the lodestar amount reached by multiplying the claimed hours by the claimed rates.  *See* Mot. at 8, 12 (Curry: 331.5 hrs.; Tierney: 91 hrs.; Paralegals: 25.6 hrs.).

United States District Court
Northern District of California

Plaintiff argues that she is entitled to reasonable attorneys' fees and costs as the prevailing party because there are no special circumstances that would render such an award unjust. Plaintiff further requests that the court, in its discretion, award prejudgment interest at a higher rate than the formula prescribed for post-judgment interest under 28 U.S.C. § 1961.

Defendants oppose the motion. Defs.' Opposition ("Opp'n.") [Docket No. 72]. They argue that Plaintiff should not be awarded fees and prejudgment interest at all, but if she is, the requested amounts should be drastically reduced. They argue that the amount of fees should be reduced to reflect the fact that Defendants prevailed on Plaintiff's fourth claim for failure to provide plan information. They also argue that some of the requested fees are excessive and duplicative, especially in light of the work that Plaintiff's attorneys did on her Administrative Appeal for benefits, as well as Plaintiff's counsel's professed experience and expertise in ERISA law.

## II.     ANALYSIS

### A.  Plaintiff's Entitlement to a Fee Award

Plaintiff requests an award of attorneys' fees pursuant to 29 U.S.C. § 1132(g) because she achieved success on her claim for benefits under the IBM Plan. She argues that the factors set forth by the Ninth Circuit in *Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980), support a fee award.

### 1.     The Prevailing Party is Entitled to Attorneys' Fees Unless Special Circumstances Render Such an Award Unjust

Section 502(g)(1) of ERISA gives the court discretion to award attorneys' fees. 29 U.S.C. § 1132(g)(1). The Supreme Court has held that a fee claimant may be entitled to attorneys' fees if the claimant shows "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). In addition, the Ninth Circuit has held that a prevailing plan participant such as Plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Smith v. CMTA–IAM Pension Tr.*, 746 F.2d 587, 589 (9th Cir. 1984) (internal quotations and citation omitted). As the Ninth Circuit has explained, ERISA "is remedial legislation which should be liberally construed in favor of

4

United States District Court
Northern District of California

protecting participants in employee benefit plans" and, specifically, "to afford them effective access to federal courts." *Id.*

Defendants concede that Plaintiff meets the threshold in *Hardt*, but argue that an analysis of the *Hummell* factors warrants denial of Plaintiff's fee request. Opp'n. at 3, 5.

### 2.   **Application of the *Hummell* Factors**

Once a court determines that an ERISA fee claimant has achieved some degree of success on the merits, the court "must consider" the factors set forth in *Hummell*, 634 F.2d 446, to guide its discretion under § 1132(g). *See Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1119, 1121 (9th Cir. 2010). In exercising this discretion, district courts should consider the following factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell*, 634 F.2d at 453. "No one of the *Hummell* factors . . . is necessarily decisive, and some may not be pertinent in a given case." *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) (citation omitted). Courts generally construe the *Hummell* factors in favor of participants in employee benefit plans. *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) ("When we apply the *Hummell* factors, we must keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans'") (citation omitted). Plaintiff argues that each of these factors supports an award of fees. Defendants contend that all of the *Hummell* factors, save the second, weigh in favor of denying a fee award. The court addresses each factor below.

### a.   **The Degree of the Opposing Parties' Culpability or Bad Faith**

Under *Hummell*, a party's "culpability" does not require a finding of bad faith. IBM's failure to fulfill its legal duty is sufficient to support an award of fees. *See Smith*, 746 F.2d at 590. ("Although bad faith is a factor that would always justify an award, it is not required."); *Caplan v.*

United States District Court
Northern District of California

*CNA Fin. Corp.*, 573 F. Supp. 2d 1244, 1248 (N.D. Cal. 2008); *King v. Cigna Corp.*, No. C 06-7025 CW, 2007 WL 4365504, at *2 (N.D. Cal. Dec. 13, 2007) ("[F]rom a legal perspective, Defendants are 'culpable' in that they were found to owe Plaintiff a legal duty that they were not fulfilling").

The court granted summary judgment for Plaintiff because IBM abused its discretion in denying her claim for benefits based on an inference, rather than an investigation of the underlying facts, where IBM had the ability to confirm the disputed facts through reviewing its own records and where Plaintiff provided concrete evidence in support of her position.  MSJ Order at 12-13. The court concluded that IBM's denial of benefits without relevant information, especially personnel and benefits records in the control of a plan administrator, amounted to an abuse of discretion and a failure to fulfill its legal duties to Plaintiff.  *See Booton v. Lockheed Med. Ben. Plan*, 110 F.3d 1461, 1463–64 (9th Cir. 1997) (finding that denial of a claim without obtaining relevant information is an abuse of discretion); *Kunin v. Benefit Tr. Life Ins. Co.*, 910 F.2d 534, 538 (9th Cir. 1990) (burden is on plan to obtain adequate information to make decision).

Thus, the first factor weighs in favor of a fee award.

### b.    Ability of Defendants to Satisfy an Award of Fees

Defendants concede that they are able to satisfy a fee award.  Opp'n. at 6.  As the Ninth Circuit explained: "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant."  *Smith*, 746 F.2d at 590. The court reasoned that, absent fee shifting, it is generally difficult for an individual plan participant to carry the heavy burden of litigating a denial of benefits.  *Id.*  The same reasoning applies here.  The second factor thus weighs in favor of a fee award.

### c.    Degree to Which an Award Will Deter Future Conduct

The court finds that the third factor also favors awarding fees to Plaintiff.  ERISA does not authorize an award of compensatory or punitive damages for bad faith behavior.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985) (holding compensatory and punitive damages not available remedies for ERISA benefit claims).  As a result, courts acknowledge that an award of attorneys' fees and costs is a way of deterring violations of ERISA.  *Caplan*, 573 F. Supp. 2d at

1248 ("[A]n award of attorneys' fees could serve to deter other plan administrators from denying meritorious disability claims.  This could indirectly benefit other individuals."); *Carpenters S. Cal. Admin. Corp.*, 726 F.2d at 1416 ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA.").

A fee award will deter IBM and other plan administrators from denying plan benefits based on inference and conjecture, without verifying facts within the plan administrator's control. This factor also weighs in favor of a fee award.

### d.    Whether Plaintiff Sought to Benefit Other Participants or Resolve a Significant Legal Issue

Plaintiff's suit did not seek relief for other plan participants besides herself; she sought to recover her own pension benefits.  Plaintiff argues that the court's determination in this case will benefit other plan participants.  This is a stretch.  This case focused heavily on the specific factual circumstances of Plaintiff's employment with a number of related corporate entities.  To the extent that the court's decision may help other plan participants, any such benefit is already captured in the previous factor as deterrence against a future failure to properly investigate information within the Plan Administrator's control.

This factor is neutral at best.

### e.    The Relative Merits of the Parties' Positions

Finally, the fifth factor—the relative merits of the parties' positions—favors a fee award. In ruling on the cross-motions for summary judgment, the court found that IBM's denial of benefits without consulting relevant and accessible information amounted to a failure to fulfill its legal duties to Plaintiff.  Further, Defendants failed to investigate the facts underlying Plaintiff's claim even after Plaintiff submitted concrete evidence in support of her position.  Plaintiff therefore had a more meritorious position on her claim for benefits.  This factor weighs in favor of a fee award.

In sum, Plaintiff is entitled to an award of attorneys' fees.  The court now turns to the appropriate amount to be awarded in this case.

United States District Court
Northern District of California

**B.     The Amount of Fees**

District courts in the Ninth Circuit typically employ the "lodestar analysis" in calculating

fee awards.  *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Camacho v. Bridgeport Fin., Inc.*,

523 F.3d 973, 978 (9th Cir. 2008) (citations omitted).  "The lodestar figure is calculated by

multiplying the number of hours the prevailing party reasonably expended on the litigation (as

supported by adequate documentation) by a reasonable hourly rate for the region and for the

experience of the lawyer." *Yamada v. Nobel Biocare Holding AG*, No. 14-55263, 2016 WL

1579705, at *6 (9th Cir. Apr. 20, 2016) (internal citation omitted).

The party seeking fees bears the initial burden of establishing the hours expended litigating

the case, and must provide detailed time records documenting the tasks completed and the amount

of time spent.  *Hensley*, 461 U.S. at 434; *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945–46 (9th

Cir. 2007).  The requesting party also has the burden to demonstrate that the rates requested are

"in line with the prevailing market rate of the relevant community." *Carson v. Billings Police

Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (internal quotation marks and citation omitted).

Generally, "the relevant community is the forum in which the district court sits." *Camacho*, 523

F.3d at 979 (citations omitted).  Typically, "affidavits of the plaintiffs' attorney and other

attorneys regarding prevailing fees in the community and rate determinations in other cases . . . are

satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge

Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Fee awards calculated under the loadstar method generally are presumed to be reasonable.

*Gonzalez v. City of Maywood*, 729 F.3d 1196, 1208–09 (9th Cir. 2013).  At the same time, the

court may adjust this figure "if circumstances warrant" in order "to account for other factors which

are not subsumed within it." *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir.

2001).  "Where the documentation of hours is inadequate, the district court may reduce the award

accordingly." *Hensley*, 461 U.S. at 433.  The district court may also exclude any hours that are

excessive, redundant, or otherwise unnecessary. *McCown v. City of Fontana*, 565 F.3d 1097,

1102 (9th Cir. 2009) (quoting *Hensley*, 461 U.S. at 434).  In addition, the Ninth Circuit has stated

that a district court may "impose a small reduction, no greater than 10 percent—a 'haircut'—based

8

United States District Court
Northern District of California

1  on its exercise of discretion and without a more specific explanation." *Moreno v. City of*

2  *Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

3        After the party presents its evidence supporting its fee request, the party opposing the fees

4  has a "burden of rebuttal that requires submission of evidence to the district court challenging the

5  accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in

6  its submitted affidavits." *Gates v. Deukmejian*, 987 F.2d 1392, 1397–98 (9th Cir. 1992) (citation

7  omitted).  The party opposing fees must specifically identify defects or deficiencies in the hours

8  requested; conclusory and unsubstantiated objections are insufficient to warrant a reduction in

9  fees. *De Amaral v. Goldsmith & Hull*, No. 12-CV-03580-WHO, 2014 WL 1309954, at *3 (N.D.

10  Cal. Apr. 1, 2014) (citing *Cancio v. Fin. Credit Network, Inc.*, 04-cv-03755 TEH, 2005 WL

11  1629809, at *3 (N.D. Cal. July 6, 2005)).  Courts have reduced fee awards where prevailing

12  counsel engaged in inefficient or unreasonably duplicative billing, or where counsel's billing

13  records contain insufficiently descriptive entries, show evidence of block billing, or billing in large

14  time increments. *See e.g.*, *Welch*, 480 F.3d at 948–50.

15        Even if the opposing party has not objected to the time billed, the district court may not

16  uncritically accept a fee request, but is obligated to review the time billed and assess whether it is

17  reasonable. *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir. 1984).

18        The court finds that the requested rates are within the prevailing market rates in the

19  community for ERISA attorneys with similar experience and qualifications.  The court also finds

20  that most of the hours expended by Plaintiff's attorneys in this litigation were reasonable, but that

21  some reductions are warranted.

22                    1.  **Reasonableness of the Rates Charged by Plaintiff's Counsel**

23        The "reasonable hourly rate" is calculated "according to the prevailing market rates in the

24  relevant community . . . ." *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  "To inform and assist the

25  court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory

26  evidence—in addition to the attorney's own affidavits—that the requested rates are in line with

27  those prevailing in the community for similar services by lawyers of reasonably comparable skill,

28  experience and reputation." *Id.* at 896, n.11.  Affidavits of the plaintiff's attorney and other

United States District Court
Northern District of California

attorneys regarding prevailing fees in the community as well as rate determinations in other cases can provide evidence of the prevailing market rate.  *Welch*, 480 F.3d at 947 (citing *Phelps Dodge Corp.*, 896 F.2d at 407).  In the absence of opposing evidence, the proposed rates are presumed reasonable.  *Phelps Dodge Corp.*, 896 F.2d at 407.

Plaintiff seeks the following hourly rates: $650 for lead counsel Kathryn Curry, $625 for partner Tracy Tierney, and $180 for paralegals Tina Ernst and Jennifer Johnson.  Plaintiff submits the following information in support of these requested rates: 1) the Curry declaration [Docket No. 69-1]; 2) the Tierney declaration [Docket No. 69-8], 3) the declaration of Glenn R. Kantor [Docket No. 69-11] supporting Curry's claimed rate; 3) citations to rates awarded to ERISA attorneys; and 4) a Request for Judicial Notice [Docket No. 70] of declarations filed by Rebecca Grey and Terence Coleman in support of the fee motion in *Echague v. Metro. Life Ins. Co.*, Case No. 3:12-cv-00640-WHO (N.D. Cal. Aug. 20, 2014), as well as Judge Orrick's Order on that motion, *Echague v. Metro. Life Ins. Co.*, 69 F. Supp. 3d 990, 997 (N.D. Cal. 2014).[3]

Kathryn Curry has been practicing law for more than 24 years and has more than 16 years of experience handling ERISA cases.  Curry Decl. at ¶ 2.  She has a degree in Business Administration from the University of California, Berkeley and graduated *summa cum laude* from Santa Clara Law School.  *Id.* at ¶ 3.  She has handled more than one hundred ERISA cases throughout her career, including appeals to the Ninth Circuit.  *Id.* at ¶ 9.  Curry is currently a partner at GCA Law Partners, LLP.  Prior to joining GCA Law Partners, Curry handled ERISA cases on the defense side.  *Id.* at ¶ 16.

Tracy Tierney has been practicing law for 18 years, with an exclusive focus in benefits, compensation, and ERISA matters.  Tierney Decl. at ¶ 5.  She holds a B.A. and M.A. from the University of Michigan and graduated *cum laude* from the University of Miami School of Law.  *Id.* at ¶ 2.  She "regularly counsel[s] clients with pension plan assets in excess of $200 million and

---

[3] The court grants Plaintiff's request for judicial notice and takes notice of Judge Orrick's Order on the fees motion.  Courts may properly take judicial notice of other court filings and matters of public record.  *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing *Burbank–Glendale–Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998)).  The court also takes notice of the fact that the Grey and Coleman declarations were filed in that matter.

United States District Court
Northern District of California

1    $300 million." *Id.* at ¶ 8.  She has served as a member of the Western Pension and Benefits

2    Conference Significant Issues Committee and authored articles on ERISA legislation and legal

3    developments.  *Id.* at ¶ 9.  She is currently a partner, and a former Managing Partner, at GCA Law

4    Partners.  *Id.* at ¶ 12.

5           Tina Ernst is a senior litigation paralegal with GCA Law Partners LLP.  She graduated

6    from San Jose State University with a degree in accounting.  She began working as a litigation

7    paralegal in 1990.  Curry Decl. at ¶ 20.

8           Jennifer Johnson is also a senior litigation paralegal with GCA Law Partners LLP.  She

9    received her Paralegal Certificate from West Valley College in 1997.  She graduated from the

10   paralegal program at West Valley College on the Dean's Honor List and was a member of the

11   National Paralegal Honor Society.  Johnson has 19 years of experience as a litigation paralegal.

12   Curry Decl. at ¶ 21.

13          Plaintiff submitted declarations from Glenn Kantor, an ERISA specialist in the San

14   Francisco Bay Area, who currently charges an hourly rate of $650 and was awarded that rate in a

15   recent ERISA litigation matter.  Kantor Decl. at ¶¶ 14-15.  Kantor's declaration in support of

16   Curry's requested hourly rate of $650 cites cases where he or other plaintiff's attorneys were

17   awarded rates ranging from $550 to $650 for work on ERISA cases.  Kantor Decl. at ¶¶ 6-8, 10-

18   13.  Kantor opines that Curry's requested rate of $650 is "consistent with what other law firms of

19   similar skill and expertise charge for this work, including [his] own."  *Id.* at ¶ 19.  Kantor and

20   Curry were opposing counsel on numerous cases, including Ninth Circuit ERISA appeals, and he

21   vouches for Curry's skill and reputation, stating that she "is an excellent ERISA litigation attorney

22   and her reputation at my firm was very high."  *Id.* at ¶ 20.

23          Kantor's declaration and the cited cases confirm that Curry's $650 hourly rate is consistent

24   with the prevailing rates for ERISA litigation specialists in the San Francisco Bay Area.  Kantor's

25   declaration confirms that the requested rate for Curry is also consistent with the prevailing rates

26   for ERISA litigation.  The court therefore concludes that Curry's hourly rate is reasonable.

27   Tierney's requested rate of $625 per hour is similarly reasonable, given the hourly rates awarded

28

United States District Court
Northern District of California

1    to attorneys with similar experience.[4]  *See also Harlick v. Blue Shield of Cal.*, Case No. 08-CIV-

2    3651-SC, 2013 WL 2422900, at *5 (N.D. Cal June 3, 2013) (approving a hourly rate of $640);

3    *Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026, 1034–36 (N.D. Cal. 2011) (awarding hourly rate

4    of $600 in ERISA case and noting rates of ERISA specialists in the San Francisco Bay Area

5    between $550 and $650 per hour in 2011).

6         The court also concludes that the requested rate of $180 per hour for senior paralegals

7    Ernst and Johnson is reasonable.  *See Zoom Elec., Inc. v. Int'l Bhd. of Elec. Workers, Local 595*,

8    No. C 11-1699 CW, 2013 WL 2297037, at *4 (N.D. Cal. May 24, 2013) (approving hourly rates

9    between $180 and $225 per hour for law clerks and paralegals).

10        Defendants do not attempt to rebut the evidence of the reasonableness of the rates sought

11   by Plaintiff in this case.  Indeed, Defendants concede that "cases in the Northern District of

12   California may support such rates."  Opp'n. at 9.

13        Based upon the declarations submitted by Plaintiff, as well as the absence of any contrary

14   evidence submitted by Defendants, the court finds that the hourly rates requested by GCA Law

15   Partners in this case were reasonable and consistent with the prevailing market rates.

16        **2.    Reasonableness of the Hours Expended During the Prosecution of The
                  Case**

17
     In granting a fee award, the court must explain how it arrived at the amount.  *Moreno*, 534

18   F.3d at 1111.  The explanation does not need to be elaborate; rather, it "must be concise but clear."

19   *Id.* (citing *Hensley*, 461 U.S. at 437).  "Where the difference between the lawyer's request and the

20   court's award is relatively small, a somewhat cursory explanation will suffice.  But where the

21   disparity is larger, a more specific articulation of the court's reasoning is expected." *Id.*  The party

22   seeking the award of fees bears the burden of submitting time records detailing the hours spent;

23

24   _____

25   [4] The court notes that all of Plaintiff's attorney time was billed by partners Curry and Tierney,
     claiming hourly rates of $650 and $625 respectively.  Plaintiff's counsel explained that their firm,

26   GCA Law Partners, is composed of twenty-four attorneys who are all partners, and that they do
     not employ any associates, who would presumably bill at lower rates.  The district court may not

27   set the fee based on speculation as to how other firms would have staffed the case, and this court
     will not attempt to determine if different staffing decisions might have led to a different fee

28   request.  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008)

1    courts may reduce the award where the records do not justify the hours spent.  *Chalmers v. City of*

2    *Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  Courts also have discretion to reduce the

3    amount of hours billed in the event that entries are block-billed, as a court will be unable to

4    determine whether all time in the entry was reasonably expended, and for duplicative or

5    unnecessary work.  *Mendez v. Cty. of San Bernadino*, 540 F.3d 1109, 1128–29 (9th Cir. 2008); *see*

6    *also Day v. AT & T Disability Income Plan*, 608 F. App'x 454, 457 (9th Cir. 2015) (affirming

7    reduction in fees where counsel spent an excessive amount of time on tasks compared to time

8    spent on similar tasks by prior counsel and attorneys in other ERISA cases, used block-billing to

9    record his time, and charged his other clients a lower hourly rate than the lodestar rate he

10   requested).

11          In this case, the parties engaged in significant litigation activities, including the motion to

12   dismiss briefing and hearing, a mediation and settlement conference, and cross-motions and a

13   hearing on summary judgment.  The court finds that most of the time spent by Plaintiff's counsel

14   to litigate this case to its successful completion was reasonable.  District courts within California

15   have acknowledged that "[p]laintiffs in ERISA matters generally must spend a great amount of

16   time preparing for conferences and other proceedings because ERISA cases tend to be factually

17   intensive."  *Oster*, 768 F. Supp. 2d at 1036 (quoting *Mogck v. Unum Life Ins. Co. of Am.*, 289 F.

18   Supp. 2d 1181, 1192 (S.D. Cal. 2003)).  This case was no different in that regard.

19          Plaintiff has submitted Exhibits A and B with the Curry Declaration, which detail the fees

20   incurred during the case through contemporaneous billing records.  Curry Decl. at ¶¶ 33-34.  Each

21   entry shows the dates on which services were performed, the name of the attorney or paralegal

22   performing the service, the task or series of tasks completed, and the time spent.  Entries that

23   reflect communications protected by the attorney-client privilege have been redacted.  These

24   exhibits show the actual work performed in this case.  Plaintiff subsequently filed the

25   Supplemental Declaration of Kathryn Curry ("Supp. Curry Decl.") [Docket No. 79], which

26   requests additional fees for time spent on the reply briefing.

27          Plaintiff seeks a total of 342.1 hours for Curry's work and 93.1 hours for Tierney's work

28   on the case.   Mot. at 12; Supp. Curry Decl. at ¶¶ 6-7.  The court notes that Plaintiff did not

United States District Court
Northern District of California

13

1    summarize the amount of time spent by each timekeeper on each key task (complaint, settlement,

2    motions for summary judgment, etc.).  In light of the court's responsibility to determine fees for

3    the hours reasonably expended, the court has analyzed the individualized billing entries as best as

4    it can.

5          Defendants argue that the requested fees should be reduced because: 1) the time includes

6    excessive drafting hours for the complaint and summary judgment motions; 2) the time preparing

7    for and attending the mediation was excessive; 3) the requested travel time was unsupported; and

8    4) certain entries are vague, block billed and/or insufficiently detailed and should therefore be

9    denied.  Opp'n. at 9-13.

10           **a.**      **Exercise of Billing Judgment**

11          The fee applicant bears the burden of establishing entitlement to an award and

12    documenting the appropriate hours expended and hourly rates.  The applicant should exercise

13    "billing judgment" with respect to hours worked, and counsel for the prevailing party should make

14    a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise

15    unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from

16    her fee submission.  *Hensley*, 461 U.S. at 434, 437.  "In the private sector, 'billing judgment' is an

17    important component in fee setting.  It is no less important here.  Hours that are not properly billed

18    to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Id.*

19    at 434 (citing *Copeland v. Marshall,* 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)).

20          Plaintiff's motion and supporting papers lack a clear statement about counsel's exercise of

21    billing judgment for the requested hours.  *See* Mot. at 11; Reply [Docket No. 78] at 5-8.  Rather, it

22    appears that Plaintiff seeks to recover all the time logged by her attorneys and paralegals on this

23    case, save for some conferences between Plaintiff and counsel that were not recorded.  Thus,

24    Curry's declaration states "I have reviewed my entries (which are being submitted to the Court)

25    and the hours set forth therein are accurate and reasonable.  There are many conferences with Ms.

26    Tierney and Ms. Gurasich for which I did not record any time.  The 333.5 hours I billed on this

27

28

United States District Court
Northern District of California

14

United States District Court
Northern District of California

1    case was reasonable and necessary to successfully litigate this matter."[5]  Curry Decl. at ¶ 27.

2    Similarly, Tierney's declaration states, "I have reviewed my entries, which are set forth in Exhibit

3    A to Kathryn Curry declaration and the hours set forth therein are accurate and reasonable.

4    Indeed, they are probably on the low side since there are many conferences with Ms. Curry and

5    Ms. Gurasich for which I did not record any time."  Tierney Decl. at ¶ 16.

6         Both Curry's and Tierney's declarations are silent as to the exercise of billing judgment to

7    exclude hours that were excessive, redundant, reflected overstaffing, or otherwise unnecessary.  In

8    the absence of a showing that Plaintiff's counsel exercised billing judgment for the requested time,

9    the court will do its best to exclude from the fee award hours that were not reasonably expended.

10   *See Hensley*, 461 U.S. at 434.

11                    **b.        Time Spent Drafting the Complaint**

12        Defendants argue that Plaintiff's request for 27.5 hours (17.9 for Curry and 9.6 for

13   Tierney) spent drafting the complaint is excessive in light of counsels' skill and experience with

14   ERISA litigation, which is reflected in their high rates, and the fact that counsel was already

15   familiar with the underlying facts of the case due to representation of Plaintiff in her

16   administrative proceedings.  Plaintiff contends that it was not "simply a cookie cutter complaint,"

17   and that "many facts were complicated and potentially confusing and [it] took time to accurately

18   and succinctly describe them."  Mot. at 12.  Plaintiff points out that the case "involved the

19   acquisition and divestiture of various companies with similar yet very different names and the

20   names made a difference to the claims made.  For instance, there was a ROLM Corporation, a

21   ROLM Company, and a ROLM division, a Siemens Corporation, and Siemens P.N. Corporation,

22   and various IBM divisions and subsidiaries."  *Id.*  Plaintiff asserts that the 27.5 hours was the time

23   that it actually took to prepare the complaint.  Reply at 5.

24        The fourteen-page complaint in this case was factually intensive and specific to Plaintiff.

25   [Docket No. 1.]  However, the court notes that while the facts in this case were somewhat

26   _____

27   [5] There is a discrepancy between the number of hours Curry claims in her declaration (333.5 hours) and the number of hours requested for Curry's work in Plaintiff's motion (331.5 hours). Curry Decl. at ¶ 27; Mot. at 12.  The court will use the number from Plaintiff's motion, as this was

28   the number used in calculating the lodestar amount.

1    complicated, the legal theories set forth in Plaintiff's complaint were fairly straightforward.  While

2    sympathetic to the factual complexities, including the importance of timing of certain events and

3    the relationship between specific corporate entities, the court notes that Plaintiff's lead counsel

4    also represented Plaintiff in her administrative appeal.  As such, counsel already had a familiarity

5    with the underlying facts, and, indeed many of the contentions in the complaint mirror the

6    arguments made in the administrative process.  *See* Dec. 3, 2013 Administrative Appeal Letter,

7    AR [Docket No. 40-1] at 25-30.

8         Plaintiff contends that the time spent drafting the complaint was reasonable, in light of the

9    fact that in IBM's denial of Gurasich's administrative appeal was based on a different reason than

10    her original denial, and Plaintiff had to tailor her complaint accordingly.  *See* Mot. at 12; Reply at

11    5.  The court notes that there are some differences between IBM's initial denial letter dated

12    October 1, 2013 [Docket No. 40-1 at 13-14], and the denial of her appeal, dated March 6, 2014

13    [Docket No. 40-2 at 6-8].  However, in light of the large degree of overlap both in the factual

14    understanding and legal theories between the December 3, 2013 Administrative Appeal Letter and

15    the complaint, the court concludes that 27.5 hours to draft the complaint should be slightly

16    reduced.  Due to the significant degree of similarity between the complaint and the administrative

17    appeal, both in articulation and presentation of the facts and legal theories, the court reduces the

18    requested hours by 15%.  The court awards 23.37 hours for work on the complaint (Curry: 15.21

19    hrs. (2.69 hr. reduction); Tierney: 8.16 hours (1.44 hr. reduction)).

20         **c.    Time Spent on the Cross Motions for Summary Judgment**

21         Plaintiff requests a total of 174.8 hours for work on the cross motions for summary

22    judgment[6] (149.2 hours for Curry, 25.6 for Tierney). [7]  Decl. of Mitchell Boomer ("Boomer

---

[6] Plaintiff did not provide a summary or a total for the hours spent on the cross motions for
summary judgment.  Rather, she provided sheets of billing entries.  Defendants reviewed
Plaintiff's counsel's billing records and provided summaries of the time spent by Curry and
Tierney for different stages of the case.  Decl. of Mitchell Boomer [Docket No. 73] at ¶ 4.
Plaintiff did not dispute the Defendants' computations in her reply.  Therefore, the court will use
the totals for hours billed for each attorney provided by Defendants.  Where Defendants' have
discrepancies between the total hours billed and the sum of the amounts billed by Curry and
Tierney, the court has recalculated the totals based on the total hours billed by each attorney.

[7] These totals are broken down as follows:

United States District Court
Northern District of California

Decl.") [Docket No. 73] at ¶ 4(b)-(c).  Plaintiff's counsel spent 61.1 hours[8] drafting Plaintiff's summary judgment motion, and at least 89.3 hours drafting Plaintiff's supporting reply brief and opposition to Defendants' cross-summary judgment.[9]  *Id.*  Plaintiff's counsel also spent 24.4 hours preparing for and attending the oral argument on the summary judgment motions.[10]  *Id.*

Defendants contend that the requested time is excessive, especially in light of counsel's professed expertise and experience (and correspondingly high billing rates) which should lead to efficiency.  They argue that Plaintiff's counsel's contention that they spent over 174 hours on the cross-motions is "astonishing," and assert that these numbers are "swollen."  Opp'n. at 10-11.

Plaintiff explains that "all of the briefs were different and specifically tailored to the type of brief."  Curry Decl. at ¶ 32.  Plaintiff also points out that Defendants submitted deposition excerpts, declarations, statements, and memoranda that were outside the administrative record that Plaintiff had to respond to and counter, so that her Opposition to Defendants' motion was different from her own motion for summary judgment and her reply.  Curry Decl. at ¶ 35.

The court is cognizant of the fact that each summary judgment motion must stand on its own and, in reviewing the cross-motions, the court has a duty to review each cross-motion separately.  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).  However, the court also recognizes that the factual and legal issues on the two cross-motions for summary judgment were nearly identical, and the factual and legal arguments in Plaintiff's Opposition to Defendants' motions for summary judgment had significant overlap with her own motion.  While Defendants' motion did include evidence outside the administrative record, these evidentiary issues were a side note; the vast majority of the parties' briefing and legal

---

Curry: 51.9 hrs. on motion; 82.4 on opposition and reply; 14.9 preparing for and attending hearing, for a total of 149.2 hrs. on the cross-motions for summary judgment.
Tierney: 9.2 hrs. on motion; 6.9 hrs. on opposition and reply; 9.5 hrs. preparing for and attending hearing, for a total of 25.6 hrs. on the cross-motions for summary judgment.

[8] Curry spent 51.9 hrs. and Tierney spent 9.2 hrs. drafting Plaintiff's motion for summary judgment. This totals 61.1 hrs.  Boomer Decl. at ¶ 4(b).

[9] Curry spent 82.4 hrs. on Plaintiff's supporting reply brief and opposition to Defendants' cross-summary judgment; Tierney spent 6.9 hrs.

[10] Curry spent 14.9 hrs. on the oral argument for summary judgment; Tierney spent 9.5 hrs.

1    analysis did not focus on disputes regarding evidence outside of the administrative record.

2         Having carefully reviewed and analyzed the parties' cross-motions for summary

3    judgment, the court determines that, in light of the significant overlap in legal and factual issues

4    for the briefs drafted by each side on the cross-motions on summary judgment, a 10% reduction of

5    hours for the summary judgment briefing is warranted to alleviate issues of duplication and to

6    address efficiency issues.  Accordingly, Curry's hours are reduced by 14.92 hours and Tierney's

7    are reduced by 2.56 hours.

8                    **d.    Travel Time**

9         Defendants also contend that Plaintiff billed an excessive amount of travel time to attend

10   the mediation and settlement conference.  Curry and Tierney each billed a total of seven hours of

11   travel time to attend the March 5, 2015 mediation (3.7 hrs. each) and the November 10, 2015

12   settlement conference (3.3 hrs. each).  *See* Pl.'s Resp. to Defs.' Objs., Ex. 1 [Docket No. 79-1] at

13   13, 20-21, 27, 31.

14        Counsel stated that they travelled with Plaintiff to the mediation and settlement conference,

15   and the "time spent during the car ride was used to prepare Ms. Gurasich for the conference and to

16   explain/update her of case and potential next steps."  Curry Decl. at ¶ 31.  In addition to counsel's

17   declaration, Plaintiff has provided her own reply declaration vouching for the accuracy of the

18   travel time requested.  Gurasich Reply Decl. [Docket No. 78-2] at ¶ 16.

19        The court finds that counsels' and Plaintiff's declarations are sufficient to support the

20   claimed travel time.

21        Defendants next argue that Plaintiff's requested attorney time should be further reduced

22   because both attorneys attended the mediation and settlement conference in this case.  The court

23   disagrees.  The court does not find that it was unreasonable for Plaintiff's two attorneys to

24   participate in the mediation and settlement conference, which were important points in the

25   litigation, especially in light of Curry's and Tierney's declarations addressing the division of labor

26   on this case.[11]  *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *7 (N.D. Cal.

27   _____

28   [11] The court notes that Defendants also had two attorneys present at the mediation and settlement.
     Defendants' contention that they only billed their client for one attorney's attendance does not

                                                    18

United States District Court
Northern District of California

1    June 5, 2013) (finding it reasonable for plaintiff's two lead attorneys to participate in the

2    mediation); *see also Chabner v. United of Omaha Life Ins. Co.*, 1999 W L 33227443, at *4 (N.D.

3    Cal. Oct. 12, 1999) (finding it reasonable for two attorneys to attend summary judgment hearings

4    because they were "pivotal points" in the litigation).

5         However, the court notes a discrepancy between the time claimed for Curry (9.8 hrs.) and

6    Tierney (10.2 hrs.) for the same settlement conference, and reduces Tierney's time by 0.4 hours.

7                       **e.    Unsupported and Blocked Billing Entries**

8         Defendants argue that a number of Plaintiff's counsels' time entries are vague and

9    insufficiently supported.  Defendants also contend that a number of entries are blocked billed and

10   contain multiple tasks within the same time entry, and that such entries do not allow the court to

11   determine the amount of time counsel spent on the various tasks.  *See* Opp'n at 3; Defs.' Objs. to

12   Billing Statements [Docket No. 74].  The court has reviewed the specific entries identified by

13   Defendants.  The descriptions in those time entries are sufficiently detailed to support the finding

14   that this time is reasonable and compensable.

15             **3.    Whether Plaintiff's "Limited Success" Justifies a Reduction in her
                       Claimed Hours**
16

17        Defendants also argue that Plaintiff's requested fees should be reduced based on her

18   limited success.  The court granted summary judgment to Plaintiff on her first claim for benefits

     under the IBM Plan, denied her second and third claims as moot, and granted summary judgment
19
     to Defendants on the fourth claim for statutory penalties for failure to provide plan documents.[12]
20

21        As the Ninth Circuit explained in *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001),

22   there is a two-step process for determining the appropriate reduction for "limited success":

          The first step is to consider whether "the plaintiff fail[ed] to prevail on claims that
23

24   alter the court's assessment.

25   [12] Defendants style their argument as a lack of proportionality to the benefit obtained and focus on
     the claimed potential monetary value of Plaintiff's fourth claim.  They cite to out of circuit
26   authority for the proposition that the court should consider the lack of proportionality between the
     recovery for Plaintiff and the requested attorneys' fees.  Opp'n. at 14.  That is not the legal
27   standard applied within the Ninth Circuit.  The court will therefore analyze Defendants' argument
     within the two-step framework set forth for determining an appropriate reduction in fees for
28   "limited success."

were unrelated to the claims on which he succeeded." *Hensley*, 461 U.S. at 434. Claims are "unrelated" if they are "entirely distinct and separate" from the claims on which the plaintiff prevailed. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1499 (9th Cir. 1995). Hours expended on unrelated, unsuccessful claims should not be included in an award of fees.

The second step of the *Hensley* analysis is to consider whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." 461 U.S. at 434. In answering that question, a district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* at 435. "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* A plaintiff may obtain excellent results without receiving all the relief requested. *Id.* at 435 n.11; *Webb v. Sloan*, 330 F.3d 1158, 1168 (9th Cir. 2003).

The Ninth Circuit has held that unsuccessful claims that are related to successful ones involve a common core of facts or are based on related legal theories, but does not require both. *Dang v. Cross*, 422 F.3d 800, 813 (9th Cir. 2005) (citing *Webb*, 330 F.3d at 1168). If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Id.* (citations omitted).

### a.   Second Claim for Breach of Fiduciary Duty and Third Claim for Equitable Relief

Neither party explicitly addressed whether Plaintiff's second claim for breach of fiduciary duty and third claim for equitable relief were related to her successful first claim for ERISA benefits, but both parties appear to assume that they are. The court finds that Plaintiff's work on these equitable theories are related to her first claim for ERISA benefits under the IBM Plan. All three claims arose from a "common core of facts" regarding her employment with IBM, her entitlement benefits under the IBM Plan, and whether her IBM Plan benefits had been transferred to Siemens. Plaintiff's second and third claims advanced "alternative legal grounds for a desired outcome," and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. *Hensley*, 461 U.S. at 435.

### b.   Fourth Claim for Failure to Provide Requested Plan Information

The court next analyzes whether Plaintiff's fourth claim for statutory penalties pursuant to 29 U.S.C. § 1132(c)(1)(B) was related to her successful claim for ERISA benefits.  In her fourth claim, Plaintiff challenged Defendants' failure to produce the Master Business Agreement ("MBA") during the administration of Plaintiff's claim.

Both Plaintiff and Defendants moved for summary judgment on this claim.  The court granted summary judgment to Defendants.  Plaintiff unsuccessfully asserted that Defendants violated two separate ERISA disclosure requirements which should result in an award of civil penalties under section 1132(c)(1)(B).  First, she argued that Defendants were required to produce the MBA during the administration of her claim pursuant to 29 U.S.C. § 1024(b)(4).  Second, she contended that Defendants' failure to produce the MBA resulted in a violation of 29 C.F.R. § 2560.503–1, which is an implementing regulation for 29 U.S.C. § 1133.

Plaintiff's fourth claim was based on wholly distinct legal theories.  It rested on statutory interpretation (i.e., was the MBA a document that was required to be produced under 29 U.S.C. § 1024(b)(4)), and the remedies available under specific statues and regulations (i.e., is a violation of 29 C.F.R. § 2560.503–1 enforceable through the civil enforcement penalty provision in section 1132(c)(1)).  *See* MSJ Order at 16-22.  These issues are distinct and independent from the legal question presented in Plaintiff's first claim.

The fourth claim also involved different facts.  Plaintiff's statutory penalties claim was based on the undisputed fact that Defendants did not produce the MBA during the pendency of her administrative claim.  Her claim for benefits focused on numerous and completely non-overlapping factual issues.  The court therefore finds that Plaintiff's unsuccessful statutory penalties claim is unrelated to her claim for benefits, and determines that it is not appropriate to award fees for time spent on this claim.

Once a district court concludes that a plaintiff has pursued unsuccessful claims that are unrelated to the successful claim, its task is to exclude from the calculation of a reasonable fee all hours spent litigating the unsuccessful claims.  *Hensley*, 461 U.S. at 440; *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986).  In so doing, the court "may attempt to identify

United States District Court
Northern District of California

specific hours that should be eliminated, or it may simply reduce the award . . . [t]he court necessarily has discretion in making this equitable judgment." *Hensley*, 461 U.S. at 436–37.  It is the applicant's duty to maintain billing time records in a manner that will enable a reviewing court to identify distinct claims.  *Id.* at 455.  Plaintiff's counsel, of course, is not required to record in great detail how each minute of her time was expended.  The *Hensley* court noted, "we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims."  *Id.* at 455, n.12 (citation omitted).

Curry declares that the fourth claim "was not complicated factually or legally and, at most, I spent 5% of my time on this claim," but provides no basis for this estimate and points to no evidence in the billing records to support this apportionment.  Curry Decl. at ¶ 37.  At the hearing, Plaintiff's counsel conceded that that the billing records provided to the court are insufficient to determine how much of counsel's time is attributable to Plaintiff's fourth claim.

Neither party provides meaningful evidence to assist the court in making this determination.  Defendants concede that the main point of Plaintiff's case was her claim for recovery of benefits.  In light of the court's familiarity with the litigation of this case and in particular, the parties' briefing on cross motions for summary judgment on this claim, the court is not persuaded by Plaintiff's post hoc approximation that, "at most" 5% of Curry's time was spent litigating this claim.

Plaintiff argues, and the court agrees, that Plaintiff's primary goal was prevailing on her claim for benefits.  The court finds that 10% of Curry's time is properly attributable to work on Plaintiff's claim for statutory penalties.  This percentage is less than an even 25% split for each of Plaintiff's four claims, in recognition that the main thrust of the suit was Plaintiff's claim for benefits.  However, the statutory penalties claim was distinct, and required separate factual and legal research and analysis.  As detailed above, the court has reduced Curry's hours by 17.61 hours for work on the complaint and cross motions for summary judgment.  Accordingly, the court reduces Curry's remaining 324.49 hours by 32.45 hours (10%) to account for time spent on

22

United States District Court
Northern District of California

Plaintiff's unrelated and unsuccessful claim for statutory penalties.

Tierney declares that she did not bill any time for work on this claim.  Tierney Decl. at ¶ 18; Tierney Reply Decl. at ¶ 6.  Therefore, the court does not reduce her time on this basis.

**C.     Summary of Award of Attorneys' Fees**

After a careful review and analysis of the parties' arguments and Plaintiff's submitted documentation the court finds that the following reductions are warranted:

- K. Curry: 2.69 hrs. (Compl.); 14.92 hrs. (Cross Motions for Summary Judgment); 32.45 hrs. (Statutory Penalties Claim) = 50.06 hrs.

- T. Tierney: 1.44 hrs. (Compl.); 2.56 (Cross Motions for Summary Judgment); 0.40 (Travel Time) = 4.40 hrs.

| Fees | Hourly Rate | Requested Time | Reduction | Amount Awarded |
|------|-------------|----------------|-----------|----------------|
| K. Curry | $650 | 342.1 hrs.[13] | 50.06 hrs. | $650 x 292.04 hrs.= $189,826.00 |
| T. Tierney | $625 | 93.1 hrs.[14] | 4.4 hrs. | $625 x 88.70 hrs.= $55,437.50 |
| Paralegals | $180 | 25.6 hrs.[15] | | $180 x 25.60 hrs. = $4,608.00 |
| | | | Total: | $249, 871.50 |

**III.     PLAINTIFF'S REQUEST FOR PREJUDGMENT INTEREST**

In ERISA cases like this one, district courts have the discretion to award prejudgment interest.  *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 627 (9th Cir. 2007).  The award of prejudgment interest is intended to compensate the plaintiff for losses incurred as a result of an insurer's nonpayment of benefits.  *See Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001).  "Whether interest will be awarded [in an ERISA case] is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Day*, 608 F. App'x at 458 (quoting *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers*

---

[13] Curry requested 331.5 hrs. through the motion for attorneys' fees and an additional 10.6 hrs. on the reply.  Mot. at 12; Supp. Curry Decl. at ¶ 6.

[14] Tierney requested 91.0 hrs. through the motion for attorneys' fees and an additional 2.1 hrs. on the reply.  Mot. at 12; Supp. Curry Decl. at ¶ 7.

[15] Plaintiff requested 25.6 hrs. of paralegal time.  Mot. at 12.

23

*Pension Plan,* 750 F.2d 1458, 1465 (9th Cir.1985)).

"Generally, the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Blankenship*, 486 F.3d at 628 (quotations and citations omitted).

"Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Blanton v. Anzalone*, 813 F.2d 1574, 1576 (9th Cir. 1987) (holding that district court abused its discretion by awarding, on an ERISA award, a prejudgment interest rate below the Treasury bill rate without making a finding as to the equities which justified the departure) (citations omitted). The court may compensate a plaintiff for "the losses he incurred as a result of [the defendant's] nonpayment of benefits." *Dishman*, 269 F.3d at 988 (holding that the district court abused its discretion in awarding a 16 percent prejudgment interest rate on an ERISA award—double the rate of return on the defendant's investment portfolio—because "[p]rejudgment interest is an element of compensation, not a penalty").

In *Blankenship*, the Ninth Circuit affirmed the district court's determination that prejudgment interest was necessary to compensate the plaintiff, as well as the decision to deviate from the standard Treasury bill rate and award a 10.01% interest rate. 486 F.3d at 628. In so doing, the Ninth Circuit noted that the district court made factual findings necessary to support the deviation. *Id.* The court cited plaintiff's declaration that as a result of Liberty Life's nonpayment of benefits, plaintiff was forced to replace the $6,093.82 per month he would have received with his own personal funds. *Id.* Those funds would otherwise have been invested in a Vanguard mutual fund in which he had already invested over one half million dollars, and which had a 10.01% return since its inception in June 2000. *Id.* Based on this factual record, the court concluded that "in order for Blankenship to be adequately compensated for Liberty's wrongful nonpayment of benefits," it was awarding prejudgment interest at a rate of 10.01%, compounded monthly. *Id.*

In this case, Gurasich has provided a declaration that for every month that she did not receive a pension payment from IBM, she withdrew at least $978.90 per month in order to pay for

24

living expenses that would otherwise have been paid with the $978.90 per month she was supposed to receive from the IBM Pension Plan.  Gurasich Supp. Decl. [Docket No. 81] at ¶ 2. She states that had she received the monthly payments from the IBM Plan to pay for her living expenses, she would not have taken money from her Chilton account and would have received earnings on her Chilton Capital Management LLC ("Chilton") investment.  Gurasich Decl. [Docket No. 69-7] at ¶ 3.

Plaintiff's request for $7,672.38 in prejudgment interest on the $47,966.10 judgment is not sufficiently supported.  It is based on Plaintiff's anticipated returns on her investment portfolio from February 1, 2012 to January 29, 2016.  Plaintiff has submitted the declaration of Patricia Journeay, the Portfolio Manager/Analyst for Plaintiff's Chilton account.  The Journeay declaration attaches a spreadsheet showing the rate of return on Plaintiff's Chilton account from February 1, 2012 through February 1, 2016, which shows that the $47,966.10 in deposits would have generated $7,672.38 in returns.  *See* Journeay Decl. [Docket No. 69-9] at ¶¶ 2-4, Ex. A [Docket No. 69-10].  However, the Journeay declaration is sparse, and does not adequately explain the assumptions or methodology used to calculate the rates of return and the basis for claiming interest in an amount that totals nearly 16% of the $47,966.10 judgment.

The court finds that Plaintiff has presented substantial evidence that Plaintiff should be awarded a prejudgment interest that deviates from the standard Treasury Bill rate in order to be adequately compensated for IBM's nonpayment of benefits.  *See Blankenship*, 486 F.3d at 628. However, her specific request is not fully supported.  The court awards 5% in prejudgment interest on the $47,966.10 judgment, for a total of $2,398.31 in interest.

## IV.   CONCLUSION

The court grants in part Plaintiff's motion for attorneys' fees and prejudgment interest. The court awards Plaintiff $249,871.50 in attorneys' fees and $2,398.31 in prejudgment interest.

**IT IS SO ORDERED.**

Dated: July 12, 2016

_____
Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

25